STATE EX REL. J. J. HARTLEY, Respondent, v. JAMES A. EVANS et al., Appellants.

**St. Louis Court of Appeals, February 27, 1900.**

1. **False Arrest:** SUIT ON SHERIFF'S BOND FOR FALSE ARREST AND IMPRISONMENT: MEASURE OF DAMAGES: INSTRUCTIONS. Loss of time, or physical injury, when proved, properly enters into the computation of damages for false arrest and imprisonment, but can never be the sole and only elements of the damages. The indignity, the humiliation, the shame, the mental suffering and disgrace caused by an unlawful arrest and imprisonment are the chief elements of the damages and it is not error to tell the jury to have regard to these in assessing the damages.

2. ———: ———: ———. Case at bar examined and on the facts it is held that the defendant sheriff made the arrest of the respondent without reasonable grounds to suspect him guilty of a felony.

Appeal from the Cape Girardeau Court of Common Pleas.—*Hon. Frank E. Burroughs,* Judge.

AFFIRMED.

*Robert L. Wilson* for appellant.

(1) We insist that the court erred in not giving the instruction prayed for by appellants, instructing the jury under the pleading, and evidence to find a verdict for defend-

ants.    For the reason that no verdict for damages can be recovered, unless pecuniary loss or physical injury has been sustained.    However great the mental anguish may be, that alone will not be a basis for damages.    The petition does not charge any physical injury or pecuniary loss or loss of occupation.    Nor did the testimony show any.    Connell v. Tel. Co., 116 Mo. 34; Spohn v. Railroad, 116 Mo. 617.    (2) There were no exemplary damages claimed in the petition, only compensatory damages; then the recovery must be confined to actual damages sustained.    Hannibal Bridge Co. v. Schaubacher, 57 Mo. 582.    (3)    Where the evidence furnishes no elements for the admeasurement of damages it is error to tell the jury that they may give such damages to the plaintiff as they may find he suffered.    Morrison v. Yancy, 23 Mo. App. 670.

*N. A. Mozley* for respondent.

(1) False imprisonment is the wrongful interference with the personal liberty of the individual.    It is not necessary that there should be any injury done to the individual's person, or to his character or reputation.    Nor is it necessary that the wrongful act be committed with malice, or ill will, or with slightest wrongful intention.    Nor is it necessary that the act be under color of any legal or judicial proceedings.    "All that is necessary is, that the individual be restrained of his liberty without any sufficient legal cause therefor."    Come v. Knowles, 17 Kan. 440.    To the same effect are these cases:    State v. Lunsford, 81 N. C. 230; Floyd v. State, 7 Eng. (Ark.) 44; Brushaber v. Stegeman, 22 Mich. 269; Soreson v. Dundas, 50 Wis. 325; McNay v. Stratton, 9 Ill. App. 215.

BLAND, P. J.—This suit is on the official bond of the sheriff of Stoddard county, for false arrest and imprisonment

of the plaintiff in the common jail of the county by the sheriff, without warrant.   The defense set up in the answer is that the arrest was made by the sheriff in his official capacity and in discharge of his official duty, in good faith and in the belief that plaintiff was wanted in Gasconade county, Missouri, to answer to a charge of murder that had been made against him.   There was a trial by jury, verdict and judgment for plaintiff for $300, from which defendants duly appealed.

The evidence on the part of plaintiff is that he had been employed as a laborer at a stave factory in Stoddard county for about two months prior to his arrest; that he was arrested in the afternoon of July 30, 1897, by defendant Evans, without warrant, and taken to Bloomfield, the county seat, and at about 5 p. m. of the same day was committed to jail and held there for four or five days; that when first arrested he was not informed of the charge against him, but was informed the same afternoon and before he was incarcerated; that when questioned by the sheriff and prosecuting attorney at the latter's office before being committed to jail, he told these officers that his name was John Hartley; that he had worked at Poplar Bluff before coming to Stoddard county, was never in Gasconade county, and that he came from the State of Illinois to Missouri; that he was 24 years of age, had never been in jail before, and had never before been accused of crime.

On the part of the defense the evidence is that the defendant, before making the arrest, saw and read over several times the following advertisement, printed and published in the Universal Detective Agency and Sheriff and Police Record, published at Indianapolis, Indiana, to wit:

"John Hartley."

"$600.   Reward—Will be paid for the arrest and detention in any jail in the United States, until an officer can

come for him, of John Hartley, who is wanted for the murder of Wm. Clark, at Mt. Sterling, Missouri, September 27, 1895.   Age about 33 years; height 5 feet 10 inches; weight about 140 pounds; complexion dark; hair black, short black mustache; drinks whiskey and chews tobacco.   Of the above reward $250 is offered by the Governor of the state of Missouri, $250 by Gasconade county, Missouri, and $100 by Charles Clark.   He is supposed to be in Meredith, Georgia, or somewhere in Texas.   A man named George Moody left with him.   Send all information to

"H. J. Jett, Feuerville, Missouri."

Evans the sheriff testified that the plaintiff, except as to age, fitted the description given in the above advertisement, and that believing he was the man wanted, he made the arrest, and telegraphed the arrest to H. J. Jett, the day after the arrest; that in answer to his telegram he received the following telegram, to wit:

"Herman, Mo., July 31, 1897.
"To J. A. Evans,
"Is it John Hartley you arrested?   If so, hold him.
"August Meyer, Prosecuting Attorney."

The following other telegrams were read in evidence.

"Bloomfield, Mo., July 31, 1897.
"To August Meyer, Prosecuting Attorney, Herman, Mo.
"Yes, it is John Hartley, don't deny his name—but denies the charge—fills description O. K.   Come at once. Can't hold long.
"James A. Evans, Sheriff, Stoddard Co."

"Herman, Mo., August 1, 1897.
"J. A. Evans, Bloomfield, Mo.
"The sheriff is on his way to Bloomfield, Mo.
"August Meyer."

The deputy sheriff of Gasconade county, in company with another party, went to Bloomfield, and on seeing the

plaintiff at once said he was not the John Hartley wanted, whereupon plaintiff was immediately released from imprisonment. There is some evidence about a picture of the John Hartley wanted in Gasconade county being attached to the advertisement. The deputy sheriff of Gasconade county testified that the defendant sheriff Evans showed him such a picture, and that he told Evans that there was no resemblance between the picture and the plaintiff. Sheriff Evans testified that there was no picture with the advertisement, and that he did not see one of the Hartley wanted. The court for plaintiff gave the following instructions:

"Instruction No. 1.

"You are instructed that if you find for plaintiff you will assess his damages at such sum as from the testimony he is entitled by reason of his arrest and imprisonment and the consequent disgrace and humiliation sustained by plaintiff on account thereof, if you believe he was, in fact, arrested and imprisoned and thereby humiliated and disgraced, and the amount of your finding will not in any event exceed the amount claimed in the petition, to wit, the sum of $5,000."

"Instruction No. 2.

"You are instructed that if you find from the evidence that plaintiff was arrested by defendant as alleged in his petition, and that said arrest and imprisonment was without probable cause therefor, as defined in instruction No. 1, then you will find for plaintiff."

"Instruction No. 3.

"The court instructs you that the defendant in this case, Jas. A. Evans, is bound to know the law, and if you find from the evidence that on or about the thirtieth day of July, 1897, he, as sheriff of Stoddard county, Missouri, arrested plaintiff and committed him to jail, as alleged in his petition, under the belief that plaintiff was guilty of the crime of murder

in Gasconade county, Missouri, you will find for plaintiff unless you further find that in making said arrest he (Evans) had reasonable grounds therefor, and by reasonable grounds is meant the possession of such facts and circumstances in relation to the guilt and identity of the plaintiff of said charge of murder by Evans as to reasonably induce such belief in a person of ordinary prudence in the same situation."

The court refused the following instruction asked by defendant:

"The court instructs you that J. A. Evans was the legally acting sheriff of Stoddard county, Missouri, at the time of the arrest of plaintiff. And if you believe from the evidence that said sheriff had seen in a public print that a man had been killed in Gasconade county by one John Hartley and a reward had been offered for the arrest and return of said John Hartley to said county for trial for the commission of said crime, and if you further believe from the evidence that defendant had a reasonable suspicion that plaintiff was the party who had committed said homicide, then defendant was justified in arresting plaintiff without a warrant and committing him to jail and detaining him for a reasonable time to investigate said charge. Although you should believe that said plaintiff had committed no felony or that no felony had been committed by anyone, and if you so believe your verdict must be for the defendants."

The court of its own motion gave the following instruction:

"The court instructs the jury that a sheriff has the right to arrest without warrant, when he has good reason to believe and does believe that a felony has been committed, and that the person arrested has been guilty of the felony. By felony is meant any crime for which a person may suffer death or be sent to the penitentiary. If, therefore, Evans, from all the information he had at the time, was justified in

State ex rel. v. Evans.

believing a felony had been committed in Gasconade county, and that the plaintiff Hartley, was guilty of the same, then Evans had the right to arrest Hartley and hold him a reasonable time, even though it should turn out that no felony had been committed or that plaintiff was guilty of no felony."

To all of which appellants duly excepted.

I. Appellants contend that pecuniary loss or physical injury are the only elements of damages in this kind of an action, and that it was error for the court to tell the jury to take into consideration the disgrace and humiliation sustained by reason of the imprisonment. The law does not limit the damages for restraint of personal liberty upon such narrow grounds as contended for by appellants; nor does it enumerate all the elements of the damages to be assessed by a jury for an unlawful restraint of that liberty, but leaves the damages entirely to the jury. Loss of time, or physical injury, when proved, properly enter into the computation of damages, but can never be the sole and only elements of the damages. The indignity, the humiliation, the shame, the mental suffering and disgrace caused by an unlawful arrest and imprisonment, are the chief elements of the damages, and it is not error to tell the jury to have regard to these in assessing the damages. 1 Sedgwick on Damages [8 Ed.], p. 70. The injured party in such cases (says Sutherland), even though the act complained of be done without malice, "is entitled to recover the expenses reasonably incurred to procure his discharge from the restraint, for loss of time, interruption of his business, and for suffering bodily and mentally which the wrong may have occasioned." In Hewlett v. George, 13 L. R. A. 682, where the plaintiff had been wrongfully confined in an insane asylum, it was held that "the damages were not confined to the expense of procuring a release and the time lost, but extended to mental suffering, humiliation, shame, disgrace and injury to reputation suffered thereby."

Indeed the court that would confine the compensation for a wrongful restraint of one's liberty to the expenses he was put to to regain that liberty, and to the pecuniary loss and physical suffering sustained thereby, would place a low estimate on the dignity of men, and practically ignore that provision of our bill of rights, which provides that "no person shall be deprived of life, liberty or property without due process of law." Every wrongful restraint of one's person is a violation of this fundamental right, and for its violation juries are allowed a wide discretion in the assessment of damages. The higher the jury estimate the blessings of personal liberty, the higher will they assess the damages for its wrongful restraint, and courts hesitate to set aside verdicts in such cases because the damages assessed are alleged to be excessive. The instruction on the damages given by the court is in accord with the views above expressed, and is approved.

II. The court gave an instruction limiting the right of a sheriff to arrest without warrant, when he has good reason to believe and does believe that a felony has been committed, and the person arrested has been guilty of the felony; and refused to instruct that if they believed a felony had been committed and the sheriff had a reasonable suspicion that the plaintiff was the party who committed the felony, then the sheriff was justified in making the arrest without warrant. "A private person has a right to arrest on suspicion of a felony without warrant, but to justify the arrest he must be prepared to show that a felony had been committed, and that the circumstances under which he acted, were such that any reasonable person acting without passion or prejudice would fairly suspect that the person arrested committed or was implicated in the crime," says the supreme court of Michigan in Malinemi v. Gronlund, 92 Mich. 22. The distinction in past felony or treason, between officers and private persons arresting without warrant, is this, says Mr. Bishop: "Should

the one arrested not be proved guilty, the private person will not be justified unless an offense had been committed by some one; while the officer is justified though no offense had been committed; yet both must have had reasonable cause to suspect the one apprehended. For when a charge of this high nature is made to an officer, he must act upon it, and pursue and arrest the suspected person at once." 1 Bishop's Criminal Procedure, sec. 181. In Roberts v. State, 14 Mo. l. c. 145, it is said: "The common law permitted arrests without warrant in cases of felony, or suspicions of felony." In Betts v. State, 6 Humphrey, 53, it was held that an officer was justified in making an arrest of a supposed felon without warrant if he acted in good faith and upon grounds of probable suspicion. A like ruling was made in Samuel v. Payne, 1 Doug. 358; Beckwith v. Philby, 6 Barn. & Cress. 635; and in Rohan v. Swain, 5 Cush. 281. In the latter case, Dewey, J., said: "The public safety, and the due apprehension of criminals, charged with heinous offenses, imperiously require that such arrest should be made without warrant by officers of the law." The discussion in the case of State v. Albright, 144 Mo. 638, is on the same line, and in harmony with the above cited authorities. As to what is reasonable cause for suspicion which will justify an officer to make an arrest without warrant, Mr. Bishop says: "The court determines, as of law; the jury, whether or not it existed in the particular case." 1 Bishop's Crim. Procedure, sec. 182. Tested by the foregoing authorities the instructions given were too narrow, and failed to put the case to the jury upon a correct hypothesis; but we do not think the error was prejudicial for this reason. The only cause or ground which the officer had to suspect Hartley guilty of a felony was the advertisement and offer of a reward of $600 published in a foreign periodical of unknown reputation or standing, over the signature of a private person, unknown to the officer. It would have been an easy matter for the officer to have obtained more

definite information before making the arrest, by telegraphing to the sheriff of Gasconade county for particulars. As shown by the testimony, it was within the knowledge of the sheriff before making the arrest, that Hartley had been employed at the stave factory for two months, and that he showed no disposition to quit his employment, or to make his escape and there would have been no danger in delaying the arrest for further information. Information from a private person, known to the officer, that the person arrested has committed a felony, will generally justify the officer to make the arrest without warrant, and he will be justified when the arrest is made on hue and cry, or under a proclamation of the governor of the state published in a newspaper offering a reward for the apprehension of one accused of a felony when the publication is authorized by law. Other facts and circumstances may also furnish reasonable grounds to justify an arrest of the suspected criminal without warrant; but no case can be found where an unauthorized publication in a foreign sheet over the signature of a private person offering a reward for the arrest of one whom he accuses of crime, is of itself reasonable, or sufficient grounds to justify an arrest by an officer without warrant. We, therefore, find as the law of this case that the defendant sheriff made the arrest of the respondent without reasonable grounds to suspect him guilty of a felony, and affirm the judgment. All concur.