CARL WEHMEYER, Respondent, v. M. J. MULVI-
HILL and M. J. MULVIHILL FURNITURE
COMPANY, Appellants.

St. Louis Court of Appeals, June 28, 1910.

1. MALICIOUS PROSECUTION: Elements. To recover for ma-
licious prosecution, it must be averred and proved that the
prosecution was instituted maliciously and without probable
cause.

2. FALSE IMPRISONMENT: Elements. The gist of an action
for false imprisonment is the unlawful detention, and, to re-
cover, it is only necessary to prove the detention and the un-
lawfulness thereof, and malice or want of probable cause need
not be proved.

3. ————: Lawful Arrest. An action for false imprisonment may
not be maintained for an arrest which is lawful, no matter at
whose instigation or for what motive it was made.

4. ————: ————: Service of Warrant: Liability of Officer. An
officer· is protected against an action for false imprisonment,
when acting under a warrant which is fair and valid on its
face and issued by competent jurisdiction, but where the war-
rant on its face is invalid, so that the officer may see that
no authority is conferred thereby, it furnishes him no pro-
tection.

5. ARREST: Misdemeanor: Felony: Right to Arrest Without
Warrant: Officers. At common law, an officer may not ar-
rest without a warrant for a misdemeanor, unless committed
in his presence, but where a felony has been committed, the
officer may arrest without a warrant on grounds of reasonable
suspicion pointing to the person arrested as the offender.

6. ————: ————: Police Officer of City of St. Louis: Right to
Arrest Without Warrant. Under section 6212, Revised Stat-
utes 1899, creating and conferring power on the police of cer-
tain cities, the police of the city of St. Louis may arrest. with-
out warrant for a misdemeanor, though not committed in the
presence of the officer, if he has reasonable grounds to suspect
the person arrested is the perpetrator of the crime.

7. FALSE IMPRISONMENT: Arrest Without Warrant: Reason-
able Cause: Liability of Officer. An officer making an arrest
without a warrant, having authority so to do, may justify his
act, though no offense has actually been perpetrated by the

person arrested, by showing that he had reasonable cause to suspect such person of having committed an offense, but where the officer has no reasonable grounds to suspect the person of the commission of an offense, the arrest is unjustifiable.

8. ———: ———: ———: **Liability of Person Directing Arrest: Facts Stated.** A customer bought a rug from a merchant for $6.50 and paid him $1.50. The customer had a claim against the merchant for $5, and the latter had agreed that the $5 might be used for the payment of goods. The rug was to be delivered C. O. D. On the customer obtaining possession of the rug from the deliveryman, he tendered in payment his claim against the merchant, which was refused, the deliveryman having surrendered the rug on the expectation of receiving $5 in cash. On the matter being reported to the merchant, he had the customer brought before him and refused to accept the credit the customer had against him, but instead demanded cash, and the customer refusing to either pay the cash or return the rug, the merchant caused him to be arrested. In an action for false imprisonment, *held*, plaintiff was within his legal rights when he insisted upon paying for the rug by liquidating the amount due him from the merchant, and that when the officer arrested him, he did not have reasonable grounds to suspect that plaintiff had committed an offense.

9. ———: **Arrest Without Warrant or Reasonable Grounds.** Where an arrest is made, without a warrant or without reasonable grounds of suspicion, for an offense not committed in the presence of the officer, there is no sufficient justification for the arrest, in an action for false imprisonment.

10. ———: ———: **Liability of Third Person For Directing Arrest.** A citizen having knowledge that another has committed an offense may arrest the offender or direct an officer to do so, but where he arrests another or directs an officer to do so without warrant and no offense has been committed, the citizen must respond in civil action for damages sustained in consequence of the arrest and imprisonment.

11. ———: ———: ———: **Defenses.** Where an officer arrests, at the direction of a citizen, without a warrant or reasonable grounds of suspicion, for an offense not committed in his presence, the only matter of justification which may be shown in defense of an action for false imprisonment is that the person arrested was actually guilty of an offense.

12. ———: **Instructions: Requiring Finding That Defendant Acted Maliciously: Harmless Error.** One sued for false imprisonment may not complain because the court erroneously required the jury to find that he acted maliciously, and without probable cause, before awarding actual damages, since that

Wehmeyer v. Mulvihill.

operated merely to impose an additional burden on plaintiff without infringing on the rights of defendant.

13. ———: **Damages: Punitive Damages: Mitigation.** Punitive damages, in an action for false imprisonment, are allowable for malice or wanton conduct of defendant, but as the motive actuating him is the criterion by which such damages are awarded or denied, the jury must consider the question of malice and want of probable cause, and must consider, in mitigation thereof, such reprehensible conduct of plaintiff, if any, as tends to show a reasonably sufficient provocation for defendant's acts.

14. ———: ———: ———: ———: **Instructions.** Where, in an action for false imprisonment based on the arrest of plaintiff on the charge of false pretenses in obtaining possession of a rug, the evidence showed that plaintiff was not guilty of any offense, and there was slight evidence that his conduct was such as to repel the idea that defendant acted with malice or wantonness in causing his arrest, an instruction which told the jury the question for it to determine was not whether plaintiff wrongfully obtained possession of the rug, but whether defendant acted maliciously and without probable cause in causing his arrest and imprisonment, was erroneous, so far as the question of punitive damages was concerned, for the reason it directed that plaintiff's conduct, even though reprehensible and sufficient to excite malice, was wholly immaterial and should not be considered by the jury.

15. ———: **Corporation: Liability.** Where the president of a corporation acted within the scope of his authority and for the corporation in making a false arrest of a person growing out of a controversy resulting from a sale of goods by the corporation to such person and an endeavor to collect money from him, the corporation was liable for the acts of the president.

Appeal from St. Louis City Circuit Court.—*Hon. Jas. E. Withrow,* Judge.

Affirmed, conditionally.

*Frank A. C. MacManus* for appellants.

(1) The petition counts upon an unlawful arrest as constituting a directed trespass. (2) The origin of the arrest-functions vested in the police officers of the city of St. Louis. Acts 1861, 449. (3) The nature and extent of that function. R. S. 1899, sec. 6212; State

v. Grant, 76 Mo. 236; State v. Holcomb, 86 Mo. 380; State v. Hancock, 73 Mo. App. 19; State v. Boyd, 108 Mo. App. 518; State v. Underwood, 75 Mo. 237; State v. Albright, 144 Mo. 638; State v. Cushenbury, 157 Mo. 168; State v. Evans, 161 Mo. 95. (4) An arrest made by a police officer of the city of St. Louis, when he has good and reasonable ground to believe that an offense has been committed, cannot be a trespass. It is not a trespass in the principal, and it cannot be a trespass in the accessory. There is no such legal maxim as *malitia supplet transgressum.* (5) If the arrest be lawful, no action for false imprisonment will lie, and it can make no difference at whose instigation it was made or what the motive was. Bierwith v. Pieronnet, 65 Mo. App. 433. (6) The court erred in refusing to allow the defendant to state to the jury the character of his belief as to the fraudulent conduct of the plaintiff. This was very important, for punitive damages rest upon bad motive. Van Sickle v. Brown, 68 Mo. 627; Wigmore on Evidence, sec. 581; Israel v. Israel, 109 Mo. App. 366. (7) No basis of actual malice is shown in this case, sufficient to support punitive damages. This is especially true as against the corporation. Hoffman v. Gill, 102 Mo. App. 325; Gardner v. Railroad, 117 Mo. App. 138; State v. Jungling, 116 Mo. 162.

*O. W. Hammer* and *Harry Baer* for respondent.

(1) The petition in this case states a cause of action for false arrest or false imprisonment, and is modeled after the petition in the case of Taaffe v. Slevin, 11 Mo. App. 507, which has been repeatedly approved by this court. (2) The plaintiff made out a prima facie case of false imprisonment. Dunleavy v. Wolferman, 106 Mo. App. 46; Boeger v. Langenberg, 97 Mo. 390; Monson v. Rouse, 86 Mo. App. 97; Ahern v. Collins, 39 Mo. 150; Panjiris v. Hartman, 196 Mo. 539; McCaskey v. Garrett, 91 Mo. App. 359; St. Louis v. Karr, 85 Mo. App. 608. (3) The court didn't err in

refusing to allow defendant to state to the jury the character of his belief as to the fraudulent conduct of the plaintiff. Boeger v. Langenberg, 97 Mo. 390. (4) We respectfully submit that the law set out in the case of Bierwith v. Pieronnet, 65 Mo. App. 433, is correct and supports our contention. (5) In this character of case the jury are the best judges of the assessment of damages. State ex rel. v. Evans, 83 Mo. App. 307.

NORTONI, J.—This is a suit for damages accrued on account of a false imprisonment. The plaintiff recovered both actual and punitive damages and defendants appeal.

It appears that plaintiff, who was the proprietor of a nickelodeon, known as the Star Theater, 1511 Market Street, made a purchase of some linoleum from the defendant furniture company of which Michael J. Mulvihill is the president. On this purchase, a payment of five dollars was made and defendant gave a receipt for that amount. On the following day, plaintiff canceled the order for linoleum and the defendant agreed that he might have credit at the furniture store to the amount of five dollars to be thereafter paid in goods which plaintiff might see fit to purchase. The purport of the instruction was for plaintiff to retain the receipt showing five dollars was paid on the linoleum ordered and that goods would be exchanged therefor. The matter ran along thus for about two months and plaintiff called at defendants' store and purchased a rug from one of defendants' salesmen for the price of $6.50. He paid $1.50 on the rug and instructed that it be delivered at his theatre C. O. D. for the balance of the purchase price. The rug was delivered on the following day by defendants' employee, engaged in delivering goods, and plaintiff proffered the receipt for five dollars, representing the amount due him from defendants on the linoleum purchase in payment on the amount due on the rug. Defendants' driver had no information touching

the arrangement between plaintiff and defendants in respect of this matter and declined to accept the receipt as payment on the rug. Plaintiff insisted defendants owed him the balance of five dollars on the linoleum transaction and told the deliveryman that defendants would accept the receipt in payment, as per their prior agreement to pay him the amount in goods. Notwithstanding this, the deliveryman declined to accept the receipt, returned to defendants' store and related the facts to the defendant, Michael J. Mulvihill, president of the defendant corporation. Mr. Mulvihill thereupon instructed the deliveryman, Scott, to go to the police station, about three or four blocks distant from the store, and state the facts to the officer in charge. Upon relating the facts to the officer in charge at the police station, an officer was detailed to accompany Scott, the deliveryman, to plaintiff's place of business. The officer and Scott repaired immediately thereto, accosted plaintiff and inquired touching the matter in dispute; that is to say, the officer inquired what was the trouble between him and defendants about the purchase of the rug. Plaintiff thereupon explained the circumstances to the police officer and showed him the receipt which he held from the defendant furniture company for five dollars theretofore paid on the linoleum. He stated that it had theretofore been agreed by Mr. Mulvihill that he might at any time have five dollars in goods in liquidation of the amount of cash theretofore paid by him on the linoleum which he had never received. After hearing plaintiff's statement, the officer suggested that he had better accompany him to Mr. Mulvihill's store and talk it over. Thereupon the police officer, the plaintiff and Scott, the defendants' deliveryman, repaired to defendants' furniture store and discussed the matter with Mr. Mulvihill. The plaintiff insisted that he had a right to keep the rug and apply the amount due him from the defendant on the purchase price thereof. And it appears that Mr. Mulvihill insisted such was not proper

in view of the fact plaintiff had purchased the rug by paying $1.50 down with an understanding the remaining five dollars of the purchase price was to be paid upon delivery. Of this Mr. Mulvihill says: "I asked him why he wanted to act in that way. He said he thought he was entitled to that rug. I told him I didn't think he was entitled to it in that way; that it was a commercial transaction. He purchased it from the salesman and paid $1.50 and it was sent C. O. D. He took the rug from the driver and we held the driver responsible for it and we could not let him get away that way."

It appears the plaintiff is a German and speaks the English language with difficulty. However, enough was said by him in that conversation to recall clearly to Mr. Mulvihill the transaction pertaining to the linoleum by reason of which the Mulvihill Furniture Company acknowledged its indebtedness to him in the sum of five dollars to be thereafter paid in merchandise. Indeed, Mr. Mulvihill did not deny the plaintiff's right to receive the five dollars in merchandise but seems rather to have laid particular stress upon the fact that plaintiff had caused the rug to be delivered to him C. O. D. and attempted to pay the deliveryman with the receipt instead of paying cash. During this conversation in defendants' store, Mr. Mulvihill requested the plaintiff to return the rug and he would cause to be repaid to him $1.50 which he had paid on the purchase price thereof. Plaintiff declined to accede to this request and insisted upon his right to receive credit on the purchase of the rug for the five dollars which defendants had received from him on the linoleum and promised to repay him in other goods. Upon plaintiff's declining to accede to the demand to return the rug, defendant Mulvihill directed the police officer to arrest plaintiff and convey him to the captain who was in charge of the police station. Touching this matter, defendant Mulvihill testified as follows:

"Q. What did you say in relation to it? A. I

said, 'Why didn't you pay the driver for that rug or
return the rug and I would give you back the $1.50?' I
said, 'We don't want any trouble with you.' He said,
'I want the $5 for the linoleum.' I said, 'It was ordered
and we expected him to pay.' I said, 'Officer, there is
nothing else to do but to let the captain settle the mat-
ter.' That was all that took place."

Thereupon the police officer took the plaintiff into
custody, conveyed him to the police station and locked
him in a cell with other prisoners where he was con-
fined for about two hours. It appears plaintiff cried and
was greatly humiliated. In the meantime, an employee
of plaintiff, Mr. Sweeney, appeared at defendants' store
and appealed to Mr. Mulvihill to release the defendant.
Upon Mr. Sweeney's paying the five dollars balance,
which he insisted was due on the purchase of the rug,
Mr. Mulvihill accompanied him to the police station and
directed the captain to release and discharge the plain-
tiff from further custody. Mr. Mulvihill said he di-
rected the plaintiff's release at the earnest request of
Mrs. Wehmeyer, conveyed to him through Sweeney. He
testified, "Mr. Sweeney handed me the five dollars."
. . . . "He said, 'For God's sake let that Dutchman
out. His wife is going crazy.' I told it to Captain Rey-
nolds." After having thus received the five dollars from
Sweeney, Mulvihill accompanied him to the police sta-
tion and personally directed the captain to release plain-
tiff from further imprisonment.

The jury awarded plaintiff a verdict of one thou-
sand dollars actual damages and assessed punitive dam-
ages in the amount of two thousand five hundred dol-
lars. Afterwards the court entered an order to the effect
that the motion for a new trial would be sustained
unless plaintiff entered a remittitur to the amount of
five hundred dollars of the actual and one thousand dol-
lars of the punitive damages recovered. The plaintiff
entered the remittitur suggested, and judgment was
given on the verdict thus modified for five hundred dol-

lars actual and one thousand five hundred dollars puni-
tive damages.

The first argument advanced for a reversal of the
judgment is to the effect that the petition is insufficient
for the reason it fails to charge defendants acted ma-
liciously and without probable cause.    There is no merit
whatever in this suggestion.    The case is not one for
malicious prosecution.    It is true when the plaintiff
predicates his right of recovery as for a malicious prose-
cution, it should be averred and proved that the prosecu-
tion was instituted maliciously and without probable
cause.    [Sharpe v. Johnston, 76 Mo. 660; Sharpe v.
Johnston, 59 Mo. 557; Boeger v. Langenberg, 97 Mo.
390.]    But such is not the rule when the case is for
false imprisonment as here.    Neither malice nor want
of probable cause are necessary elements of recovery
in this action.    The constituent elements of a cause of
action for false imprisonment are, first, the detention or
restraint of the party against his will, and, second, un-
lawfulness of such detention or restraint.    The gist of
the action is the unlawful detention.    [Monson v. Rouse,
86 Mo. App. 97; 12 Am. and Eng. Ency. Law  (2 Ed.),
722, 733; McCaskey v. Garrett, 91 Mo. App. 354; Ahern
v. Collins, 39 Mo. 145.]

But it is said as plaintiff was arrested by a police
officer in the city of St. Louis, his arrest and subsequent
imprisonment were not unlawful for the reason such
officers are empowered by statute to act without warrant
in such cases.    As a proposition, it is true that no action
for false imprisonment may be maintained for an ar-
rest which is lawful, no matter at whose instigation
nor for what motive the arrest was made.    [Bierwith v.
Pieronnet, 65 Mo. App. 431; 12 Am. and Eng. Ency. Law
(2 Ed.), 726, 739; Merchants v. Bothwell, 60 Mo. App.
341; Finley v. St. Louis Refrigerator, etc., Co., 99 Mo.
559.] See, also, Taaffe v. Slevin, 11 Mo. App. 507; Taaffe
v. Kyne, 9 Mo. App. 15.

It is the rule. too, that an officer is justified and pro-

tected against an action for false imprisonment when acting under a warrant which is fair and valid on its face, and appears to be issued by a competent jurisdiction. It is otherwise, however, if the warrant on its face appears to be invalid, and the officer may see that no authority is conferred by the warrant. [Merchants v. Bothwell, 60 Mo. App. 341; 12 Am. and Eng. Ency. Law (2d Ed.), 762, 763.] The plaintiff was arrested without warrant by the direction of Mulvihill. At common law an officer is not authorized to arrest for misdemeanor without warrant unless the misdemeanor was committed in his presence. However, when a felony had been committed, such officers were authorized to arrest therefor without warrant on grounds of reasonable suspicion pointing to the arrested person as the perpetrator of the crime. [State v. Cushenberry, 157 Mo. 168, 56 S. W. 737; State ex rel. Hartley v. Evans, 83 Mo. App. 369; State v. Underwood, 75 Mo. 230; Taaffe v. Slevin, 11 Mo. App. 507; 12 Am. and Eng. Ency. Law (2 Ed.), 762.] In construing the statute, section 6212, Revised Statutes 1899, section 6212, Ann. St. 1906, creating and conferring power upon the police of the city of St. Louis, the courts have extended the rule which obtained with respect of the authority of officers to arrest without warrant for felony at common law to misdemeanors committed in the city. In other words, under the statute referred to, the police of the city of St. Louis are authorized to arrest without warrant for a misdemeanor theretofore committed, although not in their presence, if the officer has reasonable grounds to suspect the person arrested as the perpetrator of the offense. State v. Boyd, 108 Mo. App. 518, 84 S. W. 191; State v. Hancock, 73 Mo. 19; State v. Grant, 76 Mo. 235. And when the arrest is made by an officer, it may be justified, even though no offense has actually been perpetrated by the person arrested, if it appear the officer had reasonable cause to suspect him

of having committed the offense contemplated.    [1
Bishop, New Criminal Procedure (4 Ed.), sec. 181;
State v. Underwood, 75 Mo. 230, 237; State ex rel. Hart-
ley v. Evans, 83 Mo, App. 301, 308, 309.]        ,

Although it is entirely clear that no offense had
been committed by the plaintiff, the police officer was
nevertheless justified if, at the time of the arrest,
whether for felony or misdemeanor, he had reasonable
grounds to suspect plaintiff had committed either. In
such circumstances, the police officer's act would be
within the warrant of the law and as though he were
possessed of a warrant fair upon its face. But, on the
contrary, if the officer had no reasonable grounds to
suspect plaintiff had committed an offense, then the
arrest was unjustifiable under the principle denouncing
arrests under a warrant appearing invalid on its face.
Accepting the view most favorable to defendant, it ap-
pears the police officer had no reasonable grounds to
suspect plaintiff had committed an offense, for he was
possessed of all the facts pertaining to the matter at the
time. Having gone to the plaintiff's place of business in
company with Scott, defendant's deliveryman, the officer
heard plaintiff's story to the effect that Mulvihill owed
him five dollars, balance due on the linoleum purchase,
and that he insisted on paying for the rug with this
credit, as per the former agreement authorizing him to
receive goods therefor. The officer did not arrest plain-
tiff at this time but invited him to accompany him to
Mulvihill's store and explain. Thereupon the parties
repaired thereto and the matter was gone over a second
time and it appears Mr. Mulvihill did not deny the fact
that plaintiff was entitled to credit for the five dollars
mentioned, but insisted only that as the purchase of the
rug was a different transaction and marked C. O. D.
he must pay that in cash. The offense suggested was
that plaintiff had obtained the rug from Mr. Mulvihill's
store through a false pretense with an intention to de-
fraud the Mulvihill Furniture Company of its property

therein. It is obvious that the facts disclosed by both parties to the controversy not only failed to afford reasonable grounds of suspicion that plaintiff had committed such an offense but actually repelled a suspicion to that effect. It is true defendant's deliveryman testified that at the time of delivering the rug he entered plaintiff's nickelodeon where a moving picture show was then in progress and inquired for plaintiff, saying to one of the employees he had a rug to deliver, which rug he then held under his arm; that the employee so addressed reached out, took the rug from under his arm and tossed it to plaintiff Wehmeyer who was standing in the loft or gallery operating the moving picture machine, saying, "Here's a rug from Mulvihill's," whereupon plaintiff produced the receipt for five dollars, balance on the linoleum and passed it down as payment. Although it appears plaintiff's employee reached out his hand and took the rug from under the arm of the deliveryman, neither force nor offensive conduct is disclosed in connection with this act. It appears the deliveryman surrendered the rug as a matter of course, but expected to receive five dollars in cash therefor. The grievance with respect to this feature of the transaction relates not to the fact plaintiff acquired the rug through trespass as by forcibly taking it out of the possession of the deliveryman, but relates instead to the fact that he insisted upon his legal right to pay the balance thereon with the credit due him at Mulvihill's store instead of paying cash as demanded. Speaking from the standpoint of the civil law, it is obvious the plaintiff was within his legal rights when he insisted upon paying for the rug by liquidating the amount due him from the Mulvihill Furniture Company and surrendering the receipt for goods to the amount of five dollars as had been directed theretofore by the defendants might be done. No one can doubt that had the furniture company sued plaintiff for the price of the rug, the five dollars which it owed him on the linoleum transaction

would operate a complete set-off to balance the account
in a court of law. The police officer at and before the ar-
rest was advised by both parties as to all of the facts
about which there seems to be no dispute, and after hav-
ing been so advised, hesitated until Mr. Mulvihill or-
dered the arrest. The officer himself testified that after
the matter was discussed pro and con between Mr. Mul-
vihill and the plaintiff at the Mulvihill store, he took no
action in the premises until he inquired of Mulvihill if he
desired to prosecute. Of this the police officer says, "I
asked him (Mulvihill) if he would prosecute and he said
he would. I told him to come to the office and make
complaint and he said he could not leave his place of
business; that he would send a representative over and he
sent him over." It appears to be conceded throughout
the case that Mulvihill sent Mr. Schneider, manager of
the store, to the police station with the plaintiff in cus-
tody of the officer. Mulvihill testified touching this in-
cident as follows: "I said, 'Officer, there is nothing else
to do but let the captain settle the matter.' " From the
circumstances stated, it is obvious the officer was with-
out reasonable grounds of suspicion that plaintiff had
committed an offense and he arrested him for the reason
Mulvihill directed it.

Where an arrest is made without either warrant or
reasonable grounds of suspicion for an offense not com-
mitted in the presence of the officer, it may be declared
as a matter of law insufficient as a justification in a
suit for false imprisonment. [State ex rel. Hartley v.
Evans, 83 Mo. App. 301.] It is true any citizen having
knowledge that another has committed an offense is
authorized to arrest the perpetrator of the crime or he
may direct an officer to do so. But if he arrests another
and restrains him of his liberty or directs an officer to
do so, without warrant or other competent authority,
and it appears no offense has been committed, he will
be required to respond in a civil action for such dam-

150 App.—14

ages as were sustained in consequence of the arrest and imprisonment. Indeed, where the officer acts, as in this case, at the direction of another, without either a warrant or reasonable grounds of suspicion for an offense not committed in his presence, the only matter of justification which may be shown in defense of an action for the arrest and false imprisonment is that the person arrested was actually guilty of an offense. [Pandjiris v. Hartman, 196 Mo. 539, 94 S. W. 270; 12 Am. and Eng. Ency. Law (2 Ed.), 769.]

Complaint is made of the instructions given by the court. It seems the case was tried upon an erroneous theory in that the court instructed throughout as though it were essential defendants should have acted ~~maliciously~~ and without probable cause in bringing about plaintiff's arrest and imprisonment. Although such is the rule in cases for malicious prosecution, this doctrine does not obtain in respect of actions for a false imprisonment. In such cases the questions of defendant's malice and the want of probable cause are relevant only on the inquiry as to punitive damages and contribute in no respect to the cause of action. However, the fact that the court required the jury to find defendants acted maliciously and without probable cause, before actual damages could be recovered, operated only to impose an additional burden upon the plaintiff which in no respect impinged the rights of defendants. [Monson v. Rouse, 86 Mo. App. 97.]

But instruction number 2 is severely assailed, not only as a misdirection to the jury on the correct theory of the case, but seriously infringing the defendant's rights touching a relevant matter of fact to be considered by the jury on the question of punitive damages. This instruction in substance told the jury that the question for it to determine was not whether plaintiff wrongfully obtained possession of the rug from the Mulvihill Furniture Company, but whether the defendants, or either of them, acted maliciously and without prob-

able cause in causing his arrest and imprisonment. Of course, the theory of the instruction is entirely erroneous for the reason it practically informed the jury the only issue in the case was as to whether defendants acted maliciously and without probable cause. It furthermore directed substantially that plaintiff's conduct, even though reprehensible and sufficient to excite malice, was wholly immaterial and should not be considered by them. Upon mature consideration, we are persuaded that the error in this instruction materially affected the rights of defendants in so far as the matter of punitive damages is concerned. It is true that it conclusively appears defendant occasioned plaintiff's arrest and imprisonment without any warrant or authority in law or without warrant in fact as well, for no offense had been committed by him. Indeed, on the proof made, defendants wholly failed to justify their conduct in the premises, for it may be justified only upon a showing that plaintiff had committed an offense and it now stands conceded he had committed none whatever. We are all agreed that the record shows no defense whatever to the cause of action relied upon for a recovery, but it seems instruction number 2 infringed upon defendants' rights in so far as a recovery of punitive damages is concerned.

Punitive damages are allowed as for malice or wanton conduct on the part of defendants and it is true that there is an abundance of evidence in the record tending to support the award on that score. Indeed, we are not to be understood as suggesting that the award of punitive damages is unreasonable or out of proportion to the wrong inflicted upon plaintiff, as this is a question for the jury. As the motive which actuates a defendant in actions of this kind is the criterion by which punitive damages are awarded or denied, it is competent for the jury to consider the question of malice and want of probable cause. [12 Am. and Eng. Ency. Law (2 Ed.), 726, 727.] But as malice and want

of probable cause are matters for consideration touching the question of punitive damages, it results as well that the jury should consider in mitigation thereof such reprehensible or unwarranted conduct of the plaintiff, if any, as tends to show a reasonably sufficient provocation for defendants' acts. [12 Am. and Eng. Ency. Law. (2 Ed.), 727; 19 Cyc. 369; Sedgwick on Damages, secs. 383, 384.] The instruction under consideration directed the jury that it was not to consider whether plaintiff wrongfully obtained the possession of the rug from the Mulvihill Furniture Company. In view of some of the proof this was error. There is slight evidence in the case tending to show that plaintiff's conduct in taking possession of the rug was such as might repel the idea that defendants acted with either malice or wantonness in causing his arrest or at least was provoked thereby. This proof, slight as it was, should be considered by the jury in mitigation of punitive damages only, for it is certainly insufficient to justify the arrest or amount to a defense against the cause of action asserted. [Sedgwick on Damages, sec. 384.]

As to defendant corporation, Mulvihill Furniture Company, it is clear the evidence tends to prove Mr. Mulvihill, its president, was acting within the scope of his authority and for it in and about causing plaintiff's arrest and imprisonment. Besides, the entire controversy growing out of a sale of goods by the corporation and an endeavor to collect five dollars for it, it appears he sent the manager of the store with the officer to convey the plaintiff to the station. There are abundant other circumstances in the record to support the judgment against the corporation. In such circumstances, a judgment against a private corporation is competent. [12 Am. and Eng. Ency. Law (2 Ed.), 776; Haehl v. Wabash R. Co., 119 Mo. 325, 24 S. W. 737.]

For the error in instruction number 2 above mentioned, the judgment should be reversed and the cause remanded unless the plaintiff is inclined to remit so

much of the recovery as relates to punitive damages. If plaintiff will remit the award of punitive damages within ten days from this date, the judgment for actual damages will be affirmed; otherwise it will stand reversed and remanded. It is so ordered. All concur.