Dennis F. ROUTH,
Plaintiff-Respondent,

v.

BURLINGTON NORTHERN RAILROAD
COMPANY and Dale Banning,
Defendants-Appellants.

No. WD 36703.

Missouri Court of Appeals,
Western District.

Feb. 18, 1986.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
March 27, 1986.

Application to Transfer Denied
May 13, 1986.

Donald C. Bollard, Gary M. Cupples, Deacy & Deacy, Kansas City, for defendants-appellants.

June Clark, James M. Yeretsky, Niewald, Waldeck, Norris & Brown, Kansas City, for plaintiff-respondent.

Before TURNAGE, P.J., and DIXON and LOWENSTEIN, JJ.

TURNAGE, Presiding Judge.

Dennis Routh brought suit against Burlington Northern and its agent, Dale Banning, for false imprisonment, conversion and slander.[1] The court entered judgment on the jury verdict in favor of Routh on the claim for false imprisonment and awarded $20,000 in actual damages, $50,000 punitive damages against Burlington Northern, and $50,000 punitive damages against Banning. The court entered judgment on the jury verdict in favor of Routh on the claim for conversion and awarded $300 actual damages, $50,000 punitive damages against Burlington Northern, and $5,000 punitive damages against Banning. The jury returned a verdict in favor of Routh on the claim for slander for $5,000 actual damages, $1,000 punitive damages against Burlington Northern, and $2,500 punitive damages against Banning. The trial court granted judgment notwithstanding the verdict on the claim for slander and no appeal from that judgment has been taken.

Burlington Northern and Banning contend that the evidence established there were reasonable grounds or probable cause for Routh's arrest and that the evidence was insufficient to show a conversion of Routh's property. Reversed as to the claim for false imprisonment. Affirmed as

to actual damages on the claim for conversion and reversed as to punitive damages on the claim for conversion.

On appeal this court must view the evidence in a light most favorable to the prevailing party. *Smith v. Allied Supermarkets, Inc.*, 524 S.W.2d 848, 849[1] (Mo. banc 1975). This court must therefore view the evidence most favorably to Routh. The evidence shows that Routh was arrested about 9:15 p.m. on May 3, 1981, on Highway 9 in Parkville. At the time Routh was arrested he was alone in his pickup truck and his truck was loaded with 15 new railroad ties.

Prior to May 3 Burlington Northern was in the process of replacing the ties under the railroad tracks which ran through Parkville. For that purpose Burlington Northern had stacked large numbers of ties at intervals along the tracks. Prior to May 3 the Parkville Police Department was notified that Burlington Northern was in the process of replacing ties and that the stacks of new ties were likely to be the subject of theft.

On the night of May 3, Sgt. Burton of the Parkville Police Department spotted Routh driving a truck which was loaded with railroad ties on Highway 9. Highway 9 runs parallel to the tracks of the Burlington Northern. Sgt. Burton stopped Routh's truck on Highway 9 at a point which was parallel to the railroad tracks and some 40–50 feet higher than the tracks. When Routh got out of his truck Burton observed that Routh was wearing coveralls which were covered with creosote and that Routh's hands and forearms were also stained by creosote. Burton also observed that the ties in Routh's truck had a considerable amount of creosote on them. Burton asked Routh if he had a slip which authorized him to be on railroad property and Routh responded that he had not been on railroad property. Burton then told Routh he was under arrest for felony theft

1. Sgt. Burton and the City of Parkville were also sued but the claims against them were settled prior to this trial.

and handcuffed him. During this exchange Burton told Routh that "they were losing ties right and left."

Shortly after Burton arrested Routh, Dale Banning, a special security officer with Burlington Northern, arrived at the spot where Burton had pulled Routh over. Banning came to the scene from his normal place of duty in North Kansas City after hearing a radio transmission from one of the trains in the Parkville area. The transmission stated that a pickup truck with ties in it had been stopped by a Parkville police officer.

When Banning arrived he immediately approached Routh and said "Got kind of greedy, didn't you?". Banning next went down the embankment to the right-of-way to check the markings on the new ties stacked along the tracks against the markings on the ties in Routh's truck. Banning returned and told Burton that the markings were the same. Burton asked Banning if he wanted to press charges and Banning replied that he did. Routh was thereupon taken to the Parkville police station.

Routh testified that after he had been stopped he tried to explain where he had gotten the ties, but that neither Burton nor Banning would listen to him. Routh testified he was not able to give his explanation of where he had obtained the ties until he arrived at the police station. Once at the station, Banning and Burton interrogated Routh for about two to two and one-half hours.

The explanation Routh testified he gave during this interrogation is as follows. Routh stated that on May 3 his friend Randy Humphries called him at home to tell him that a man was selling ties at a nearby "swap and shop" for $10 a piece. Humphries knew that Routh was looking for ties to use in his yard and told Routh the ties looked good. Routh and Humphries arranged to meet the man at a 7-11 store on North Brighton in order to buy the ties. Routh testified he met Humphries and the man at the 7-11 store and paid $150 in cash for 15 ties but received no receipt or other writing as evidence of the transaction.

Routh testified that after the ties were loaded in his truck, he drove to Humphries' home where Routh's wife was talking with Humphries' wife. Routh stayed at the Humphries' house for some time, and then left for Parkville to buy gasoline for his truck. He stated that while in Parkville he turned his truck around and in the process one tie came completely out of the truck and another came partially out with one end on the ground and the other end in the truck. Routh testified that he put his coveralls on to get the ties back into the truck, but did not use his gloves because he could not find them. He stated that once in Parkville he drove by the City Hall and Park College before being pulled over. The evidence showed the railroad track running past City Hall was on the same level as the adjoining ground.

After Burton and Banning heard Routh's explanation they decided to release him pending further investigation. Routh's wife had arrived at the police station when the decision to release Routh was made and she paid a tow truck $25 for towing Routh's truck to City Hall. Banning instructed Burton to tell Routh to leave the ties on the ground outside City Hall and Routh did so. There was no evidence concerning the disposition of the ties after Routh left them at the City Hall but Banning testified that he assumed they were laid under the track running past the City Hall.

When Routh was released he told Burton and Banning that he would cooperate in finding the man who had sold him the ties. For that purpose Routh contacted Humphries the next day. However, no information was obtained concerning the identity of the man from whom Routh said he purchased the ties. Within a few days after his arrest Routh obtained an attorney.

Sgt. Burton requested the Platte County prosecutor to file charges against Routh, but an assistant prosecutor found insufficient evidence on which to file a charge of

receiving stolen property. There is no indication that the prosecutor considered whether there was sufficient evidence to support a theft charge.

Routh submitted a claim for damages for false imprisonment by MAI No. 23.04. The instruction required the jury to find for Routh if they believed that Banning intentionally instigated the restraint of Routh. Routh's theory at trial and on appeal is based on the contention that Banning's statement to Burton at the scene of the arrest that the railroad would press charges against Routh was wrongful. Routh points to Burton's testimony that if Banning had not told him the railroad would press charges, he would have released Routh at the scene of the stop. Routh at trial and on appeal does not contend that he was restrained for an unreasonable time nor does he predicate recovery on any events which occurred after Banning's statement at the scene that the railroad would press charges.

■ It is well settled that a police officer may arrest for a felony if he has reasonable grounds to believe that a felony without a warrant has been committed by the person arrested. *Wehmeyer v. Mulvihill*, 150 Mo.App. 197, 130 S.W. 681, 684 (1910). It is further required that reasonable grounds for the arrest must exist at the time the arrest is made. *Id.* at 684. It is important to keep in mind that the existence of reasonable grounds for the arrest is predicated upon facts known to the officer at the time the arrest is made and not on the facts as they appear now. *Gray v. McAtee*, 233 Ky. 97, 25 S.W.2d 65, 68[5, 6] (1929), *Van Fleet v. West American Ins. Co.*, 5 Cal.App.2d 125, 42 P.2d 378, 380[6, 7] (1935).

■ Further, Routh was required to prove his case by substantial evidence and a mere scintilla of evidence is insufficient.

*Bergel v. Kassebaum*, 577 S.W.2d 863, 866–67[2, 3] (Mo.App.1978).

■ Viewing the evidence in the light most favorable to Routh this court finds that Routh did not make a submissible case. Under the facts known to Burton at the time he made the arrest it must be concluded that he had reasonable grounds to believe that Routh had wrongfully taken the railroad ties. The jury was instructed that reasonable grounds means the existence of facts which would warrant an ordinarily cautious and prudent person to believe that Routh had committed the offense for which he was arrested. The facts known to Burton at the time of the arrest fit the definition of "reasonable grounds." At the time of the arrest Sgt. Burton knew that large numbers of railroad ties were stacked along the Burlington Northern tracks running through Parkville. Routh's own evidence reveals that Burton told him at the time Routh was arrested that "they were losing ties right and left."[2] Routh's Exhibit 12, which was a copy of an incident report prepared by Burton concerning the arrest of Routh, stated that Burton was aware of several losses of railroad ties from the Burlington Northern roadway west and north of Parkville. The evidence also showed the right-of-way near the City Hall where new ties were stacked was on ground level while the railroad track at the point where Routh was stopped was lower than the road. The arrest must be viewed in light of Burton's knowledge of these facts.

When Burton saw Routh driving east on Highway 9 with his truck loaded down with railroad ties at approximately 9:15 p.m. on a Sunday evening in close proximity to stacks of ties from which thefts were occurring, Burton certainly had reasonable cause to investigate. When Routh got out of his truck with his coveralls, hands and forearms covered with creosote, and 15 new ties covered with creosote in the truck,

**2.** Routh contends there was no evidence that any ties had been stolen. Burton testified that he did not have any report of ties being stolen at the time of the arrest. However, Routh testified that Burton stated they were losing ties. Since

plaintiff, Routh, is bound by the testimony he gave, this court must review all essential portions of it, both favorable and unfavorable. *Thaller v. Skinner & Kennedy, Co.*, 315 S.W.2d 124, 126–27[2, 3] (Mo. banc 1958).

Burton had sufficient grounds to detain Routh for further investigation. When Banning arrived and identified the markings on the ties in Routh's truck as being the same as the markings on the ties next to the railroad track, this court has no difficulty in concluding that at that time Banning and Burton had reasonable grounds to believe that Routh had taken the ties from the Burlington Northern right-of-way.

Routh's evidence further showed that when he was taken to the police station in City Hall, Burton compared the markings on the ties that were stacked along the right-of-way at City Hall with those in Routh's truck. He confirmed that the markings were the same. There was no evidence to show that Banning or Burton were mistaken when they said the markings on the ties in Routh's truck were the same as the markings on the ties along the railroad.

■ Routh's evidence revealed that Routh told both officers at the scene that he had obtained the ties through a friend. However, the officers were not required to believe Routh's explanation. *Michel v. Smith*, 188 Cal. 199, 205 P. 113, 117[9] (1922). Thus, the officers were justified in acting on the reasonable grounds then apparent to them rather than accepting Routh's explanation and immediately freeing him.

Routh attempts to characterize Banning's actions and statement that the railroad would press charges as wrongful. Routh fails to point out in what respect Banning's actions were wrongful. Given the facts known to Banning at the time he arrived at the scene and the finding that markings on the ties in Routh's truck matched the markings on those stacked by the railroad, it can only be concluded that Banning would have been derelict in his duty if he had not told Burton that the railroad would press charges.

The rule is clear that "no action for false imprisonment may be maintained for an arrest which is lawful, no matter at whose instigation nor for what motive the arrest was made." *Wehmeyer, supra,* 130 S.W. at 683. Thus, if Burton made the arrest on reasonable grounds then even if Banning instigated the continued restraint of Routh there could be no action for false imprisonment. As set out above Burton had reasonable grounds to arrest Routh. The information supplied by Banning confirmed Burton's belief that Routh had stolen the ties. These facts do not supply any basis for an action for false imprisonment.

The judgment in favor of Routh for actual and punitive damages for false imprisonment is reversed.

■ Burlington Northern and Banning contend that the trial court should have sustained their motion for judgment notwithstanding the verdict on the conversion count because Routh failed to make a submissible case. In contrast with the limited view of the evidence applicable to the false imprisonment count, the evidence as a whole must be reviewed to determine if Routh made a case in conversion.

Routh testified that he purchased the ties from a man unknown to him and paid $10 a piece. The ties bore markings on one end only which Banning and Burton found to be the same as the markings on the ties stacked along side the tracks. The difficulty in determining whether the ties in Routh's truck actually came from Burlington Northern is due to the fact that there is no evidence as to what markings were on the ties in Routh's truck. The evidence showed that the ties supplied to Burlington Northern were supposed to bear a marking of "K481," denoting that the ties were treated in Kansas City in April of 1981. The evidence showed that only ties sold to the railroad bore three numbers in addition to the initial. However, the evidence revealed that the stamp used to mark the ties did not always properly strike so that on some ties the "1" was omitted, leaving the mark "K48." The evidence further showed that the company which sold the ties to Burlington Northern also sold to the public ties bearing the letter "K" and two numbers. Since some of the Burlington North-

ern ties bore the imprint of "K481" and others bore only "K48" it is possible that the ties in Routh's truck could have been stamped with the letter "K" and two numbers only and still matched the markings on the ties stacked next to the track. Since there was no evidence as to what imprint the ties in Routh's truck bore there was no evidence to conclusively prove that those ties bore an imprint of an initial and three numbers and were therefore Burlington Northern's ties. Absent such evidence the jury could and obviously did believe Routh's testimony that he purchased the ties and did not take them from Burlington Northern.

■ To support an action for conversion it is necessary for the party aggrieved to have title or right of property in a chattel and to have or to be entitled to the possession thereof at the time of the conversion. *Jackson v. Rothschild,* 99 S.W.2d 859, 861[8] (Mo.App.1936). Here the evidence did not establish that the ties in Routh's truck were the property of Burlington Northern because there was no evidence that they bore the imprint of an initial and three numbers as only ties sold to Burlington Northern at the time in question were imprinted. Under all the evidence the jury could have found that the ties were purchased by Routh from another individual and were not the property of Burlington Northern.

■ The submission of the question of punitive damages for the conversion is also challenged by Burlington Northern. In that contention Burlington Northern is correct. To recover punitive damages there must have been evidence to show that Burlington Northern and Banning acted willfully, intentionally and maliciously. This has been defined to mean:

> [t]he party must know that the act is *wrongful* and must do it intentionally without just cause or excuse. If he acts in good faith and in the honest belief that his act is lawful, he is not liable for punitive damages even though he may be mistaken as to the legality of his act.

*Walker v. Huddleston,* 261 S.W.2d 502, 507[6, 7] (Mo.App.1953).

■ Here there is no evidence that Banning acted wrongfully with the knowledge that he was taking Routh's property without just cause or excuse. As pointed out in the discussion of Routh's claim for false imprisonment, at the time Banning directed Routh to leave the ties at City Hall Banning had reasonable grounds to believe that Routh had taken the ties from the railroad. There is no evidence that Banning intentionally took the ties knowing they belonged to Routh. While it is true that Banning heard Routh's explanation and agreed to release Routh pending further investigation, the evidence indicates that Banning had reasonable grounds to believe the ties had been stolen from Burlington Northern. The evidence did not show that Banning acted intentionally to deprive Routh of his property without just cause or excuse. Rather, the evidence indicates Banning acted in good faith and in the honest belief that he was acting lawfully, in directing the ties be taken from Routh. It was therefore improper to submit the question of punitive damages in connection with the conversion.

The judgment for $300 actual damages for conversion is affirmed. The judgment for actual and punitive damages for false imprisonment and punitive damages for conversion is reversed. The costs are divided with 25 percent being assessed against Burlington Northern and Banning and 75 percent against Routh.

All concur.