**WILLIAM A. SMITH CONTRACTING COMPANY, Inc., Appellant,**

v.

**MISSOURI PACIFIC RAILROAD COMPANY, Respondent.**

No. 25645.

Missouri Court of Appeals, Kansas City District.

April 3, 1972.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 11, 1972.

Application to Transfer Denied July 17, 1972.

Kenneth O. Smith, and Douglas H. Delsemme, Kansas City (Knipmeyer, McCann & Millett, Kansas City, of counsel), for appellant.

B. Kent Snapp, Hilary A. Bush, and James L. Burgess, Kansas City (Johnson, Lucas Bush & Snapp, Kansas City, of counsel), for respondent.

PER CURIAM:

About July 2, 1966, plaintiff made a contract with defendant that plaintiff would construct main and auxiliary tracks and appurtenances and to rehabilitate the former Southern branch line between Marlin and Waco, Texas, all owned by defendant. In the contract defendant agreed to transport plaintiff's contractor's equipment to the construction site without transportation costs. This equipment was to be used by plaintiff solely for the purpose of performing the work required of it under the construction contract which further provided that plaintiff would hold defendant free and harmless from all liability for damages to plaintiff's property from any cause including negligence of defendant's agents and employees. While en route from Kansas City, Kansas to Waco, Texas, the contractor's equipment suffered damages, stipulated by the parties to be a total of $7,599.02. Plaintiff sued for the damages and the judgment of the trial court was for defendant.

The question is whether defendant was engaged in the performance of its ordinary duties as a common carrier at the time it accepted plaintiff's shipment to the construction site so as to be subject to the Carmack-Cummins Amendments, 49 U.S. C.A., Section 20(11), which declares invalid in such circumstances contracts exempting the carrier from liability; or was the shipment accepted as a "special engagement" of defendant acting in some capacity other than that of a common carrier, which would not subject it to restrictions of the Interstate Commerce Act, and the Carmack-Cummins Amendments?

Additional stipulated facts upon which the action was submitted to the trial court are these: Plaintiff has received at least $218,122.63 as payment for its work performed under the construction contract; plaintiff has not been billed for shipping charges for the contractor's equipment, nor has it paid any amounts designated as payment for shipping charges; the bill of lad-

ing for the shipment shows consignment to the "Missouri Pacific Railroad, c/o William A. Smith Contracting Company, Inc., at East Waco, Texas," with the defendant's railroad as the route of shipment; and the bill of lading did not include the weight of shipment or the freight weight, but it did include under the heading "Shipper's Special Instructions" the comment "Free Billing—contract account."

Defendant relies principally upon the 1913 case of Santa Fe, Prescott & Phoenix Railway Company v. Grant Brothers Construction Company, 228 U.S. 177, 33 S.Ct. 474, 57 L.Ed. 787. The facts there were that pursuant to a construction contract the railroad agreed, at a reduced tariff rate than that accorded to the general public, to transport men and materials to and from the construction site, and further after it was completed, to a site where further grading was to be done by the contractor. The cars carrying the equipment were placed on a track in a desert without water, inhabitants, a station agent or fire apparatus. The cars were left without a watchman in charge, and the contractor's property was lost by fire. The railroad's agreement to carry the contractor's property was to be performed within Arizona— an intrastate shipment. In denying the contractor a recovery and in declaring valid the provision of the contract, "that the company shall assume no obligation or risk in case of accident or damage to men and supplies", the court did state the common law rule: "It is the established doctrine of this court that common carriers cannot secure immunity from liability for their negligence by any sort of stipulation." (citing cases), 228 U.S. 184, 33 S.Ct. 476, and said further, "Manifestly, this rule has no application when a railroad company is acting outside the performance of its duty as a common carrier. * * * It is apparent that there may be special engagements which are not embraced within its duty as a common carrier although their performance may incidentally involve the actual transportation of persons and things, whose carriage in other circumstances

might be within its public obligation." 228 U.S. 185, 33 S.Ct. 477.

The Grant case is distinguishable on its facts, and importantly, that it was decided before Congress declared the public policy of the nation by the Carmack-Cummins Amendment of 1915, providing that a common carrier of property in interstate commerce may not relieve itself of liability by contract. See Historical Note to 49 U.S.C.A., Sec. 20(11); and 14 Am.Jur.2d, Carriers, Sec. 539, p. 67, and Sec. 554, p. 76. Other cases cited by defendant are also distinguishable. Terminal Railroad Ass'n of St. Louis v. Ralston-Purina Co., 352 Mo. 1013, 180 S.W.2d 693, was an indemnity case for recovery of damages for the death of a switchman under the Federal Employer's Liability Act, the death occurring on a track leading to defendant's plant, and no interstate shipment of property was involved. There was also no interstate shipment of property in Settle v. Baldwin, 355 Mo. 336, 196 S.W.2d 299, that being a case for recovery of damages for the furnishing of an unsafe refrigerator car under a tripartite contract. In Insurance Company of North America v. Elgin, Joliet & Eastern Railway Company (CA 7th), 229 F.2d 705, although the Grant case rule, supra, of special arrangements was set forth, there was again no interstate shipment of property for the damage to which recovery was sought.

It is settled that the Interstate Commerce Act, 49 U.S.C.A., Sec. 20(11), codified the common law with respect to a common carrier's liability for damage to a shipper's property, i. e., that the carrier is liable for the full actual loss, damage or injury caused by it unless it can show that the damage was caused by (a) the act of God, (b) the public enemy, (c) the act of the shipper himself, (d) public authority, or (e) the inherent vice or the nature of the goods. Missouri Pacific Railroad Co. v. Elmore & Stahl, 377 U.S. 134, 84 S.Ct. 1142, 12 L.Ed.2d 194, 197; Hamilton Manufacturing Company v. Chicago & North-western Ry. Co. (D.C.Wis.), 176 F.Supp. 546, 548. There is no contention that any of these exceptions apply. It is also said that the liability of the carrier for loss, damage or injury to interstate shipments is governed by the Interstate Commerce Act and the United States Courts. Missouri Pacific Railroad Company v. H. Rouw Company (CA 5th), 258 F.2d 445.

There is no question but that defendant is a common carrier within the purview of the Interstate Commerce Act. See 13 Am.Jur.2d, Carriers, Sections 1, 2, p. 560. As a common carrier it was under a duty to accept for shipment plaintiff's contractor's equipment. 13 Am.Jur.2d, Carriers, Sec. 235, p. 749. This equipment did not belong to defendant, but to plaintiff, and it is of no consequence that the bill of lading showed the consignee to be "Missouri Pacific Railroad, c/o William A. Smith Contracting Company, Inc." There is no stipulation of fact that plaintiff had any control over the shipment while it was en route to Waco, Texas, which perhaps might make applicable the circus train cases mentioned in 13 C.J.S. Carriers § 117, p. 229, but the stipulation of facts show that the defendant had control of the shipment when it was damaged. Under all the facts, it must be held that defendant was acting as a common carrier and not pursuant to a "special engagement" under its contract with plaintiff that the latter perform construction work for defendant on its property. The Carmack-Cummins Amendment, supra, applies, and thereunder defendant's attempt to limit its liability for negligence is void. 13 C.J.S. Carriers § 97(2), pp. 187, 188; 13 C.J.S. Carriers § 99, p. 193; 14 Am.Jur.2d, Sec. 554, p. 76. See also Union Pacific Railroad Company v. United States, 292 F.2d 521, 523, 524, 154 Ct.Cl. 427; and Chicago & N. W. Ry. Co. v. Davenport (CA 5th), 205 F.2d 589, 594, et seq. (where the railroad sought to recover for damages paid its employee under an indemnity provision in a contract for haulage of a circus train, which provision was held void). Compare also Resolute Insur-

ance Co. v. Morgan Drive-Away, Inc., Mo.App., 403 S.W.2d 913, 918 [5].

 Defendant says in its brief that if the judgment should be reversed, then it is entitled to have judgment on its counterclaim for $595.32. This amount was stipulated to be defendant's freight charges, and the same was prayed for in its counterclaim below. Judgment on that counterclaim was against defendant, and no notice of appeal was filed by defendant, which fact precludes its consideration here regardless of the stipulation. Civil Rules 82.04, 82.05, V.A.M.R., Hance v. Johnson, Stephens & Shinkle Shoe Company, Mo. App., 306 S.W.2d 80. Plaintiff does not concede that its requested judgment on its stipulated damages, $7,599.02, be here reduced by the amount of the freight charges.

The judgment is reversed and the case is remanded with directions to enter judgment for plaintiff in the amount of $7,599.-02.