OPINION OF THE COURT
Edward H. Lehner, J.
The novel legal issue presented on this motion pursuant to CPLR 4404 is whether the court may direct a new trial solely on the issue of punitive damages when the jury declined to award such damages.
FACTS-
Plaintiffs, students in defendant’s acting school, instituted this action to recover damages based on allegations of sexual abuse and harassment.
At trial the moving plaintiffs (all of whom were in their early 20’s at the time of the incidents complained of) testified that defendant (who was then in his mid-60’s) caused them to perform at school various sexual acts with him or in his presence, including fellatio upon him and masturbating and engaging in *423 lesbian acts in his presence. Plaintiffs acknowledged that no physical force was employed or threatened by defendant to cause them to perform these acts. They asserted, however, that defendant individually told them that this sexual activity was intended to release their inhibitions and thus improve their acting skills. They indicated that, in light of defendant’s outstanding reputation as an acting teacher who had taught many famous members of the profession, they trusted him, although they each professed doing so with a certain amount of trepidation.
Defendant denied that any of the alleged sexual activity occurred except for one instance of fellatio which he stated was initiated by one of the plaintiffs.
plaintiffs’ causes of action
Plaintiffs’ causes of action were brought pursuant to the common law of this State. State and local enactments prohibit educational discrimination on account of “race, color, religion, disability, national origin, age or marital status,” but, unlike the sections on employment and housing discrimination, do not provide protection for those discriminated against on account of sex. (Executive Law, § 296, subd 4; Administrative Code of City of New York, § Bl-7.0, subd 4.) Furthermore, defendant’s school is not alleged to be exempt from real property taxation so as to be an educational institution subject to the above sections.
While Federal law (US Code, tit 20, § 1681, subd [a]) has been held to bar sexual harassment in educational institutions (Alexander v Yale Univ., 459 F Supp 1, affd 631 F2d 178), there is no jurisdiction under that statute since defendant’s school does not receive any Federal financial assistance. (See C. Mackinnon, Sexual Harassment of Working Women, pp 164-174, discussing traditional common-law causes of action in the area of employment discrimination.)
THE JURY CHARGE
Claims based on three common-law causes of action were submitted to the jury, to wit: 1) assault, 2) battery, and 3) intentional infliction of mental distress. With respect to the claims of assault and battery, the court charged that the consent of the plaintiffs to the performance of the sexual acts complained of would be a complete defense unless i) the defendant falsely represented to the plaintiffs that their performance of such acts was related to their training as actresses, and ii) plaintiffs relied upon such misrepresentation. (See Restatement, Torts 2d, § 892B.) With regard to the claim of intentional infliction of mental distress, the jury was advised that in order for plaintiffs *424 to recover it must find that defendant’s conduct was so outrageous and shocking that it exceeded all reasonable bounds of decency. The court further informed the jury that plaintiffs, in addition to demanding compensatory damages, were seeking an award of punitive damages on each of the three causes of action, and instructions were given with respect to the jury’s authority with regard thereto.
THE JURY VERDICT
The jury found in favor of each of the moving plaintiffs in the sum of $2,000; $500 was granted on the claim of assault, $1,000 on the battery cause of action, and $500 for intentional infliction of mental distress. No award of punitive damages was made to any plaintiff on any cause of action.
THE JURY NOTE
Together with its verdict the jury handed up a note in which it was stated that “minimal damages” were awarded because “the defendant has suffered sufficiently in terms of stress, damaged reputation and financial distress” and “as a result of the findings of guilt by the jury, the defendant will continue to suffer by result of a damaged reputation in the acting/teaching field.” The note concluded as follows: “Hopefully, our decision will serve as a future deterrent in sexual abuse and harassment behavior of teacher against student.”
Such note represents the understandable, well-intentioned efforts of a conscientious and thoughtful jury to explain its decision. The legal question presented by the note is whether its contents may be considered in the determination of the motion before the court.
It has been held that when a jury attempts to interpolate something in a verdict such interpolated matter is mere surplus-age and does not constitute part of the verdict. (Raga v Kresge Co., 274 App Div 966; Kalmanson v Callahan, 276 App Div 983; Carrig v Oakes, 173 Misc 793; De Vito v Knettel, 25 Misc 2d 928.) The cases discussing this issue generally arose before the adoption of comparative negligence in the State, wherein the jury would improperly attempt to apportion damages (e.g., De Vito v Knettel, supra).
From the foregoing, it does not necessarily follow that a note may not be considered for any purpose. For instance, if jurors were to indicate in a note that their verdict was based on an agreement to determine the amount of damages by having each juror specify an amount, with the amounts to be added and then divided by six, it wnuld seem proper to set aside such verdict as a *425 “quotient verdict.” (See Siegel, NY Prac, § 401.) Similarly, if in a note it were clearly indicated that an improper “compromise verdict” had been rendered, the same result should ensue.
Thus, although no explanation was sought of the jury, and explanations should not be encouraged, as they could result in confusion and uncertainty, the court nevertheless believes that in the case at bar there is no valid reason to disregard the note in considering the issue before it.
COMPENSATORY DAMAGES
Although the court would have been inclined to award higher compensatory damages than were awarded by the jury, a court may set aside a verdict only if the award is found to be “so grossly inadequate as to be unconscionable” (Mansfield v Graff 47 AD2d 581, 582; Ashdown v Kluckhohn, 62 AD2d 1137), or, put another way, to avoid usurping the function of the jury, the power should be used “only if the verdict is so disproportionate to the injury as to not be within reasonable bounds” (Riddle v Memorial Hosp., 43 AD2d 750, 751).
Here there was very little proof presented at trial on the issue of damages sustained by plaintiffs. Therefore, in light of the foregoing guidelines, the court may not overturn the jury award of compensatory damages, and the request that it do so is denied.
PUNITIVE DAMAGES
Punitive damages may be awarded “where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but to deter him, as well as others who might otherwise be so prompted, from indulging in similar conduct in the future.” (Walker v Sheldon, 10 NY2d 401, 404.) The award is “to serve as a warning to others” and “as punishment for gross behavior for the good of the public” (Toomey v Farley, 2 NY2d 71, 83).
Here the wrongs which the jury found defendant to have committed are most reprehensible. The jury, by rendering a verdict for plaintiffs on each of the three causes of action submitted to it, determined that defendant misrepresented the reason he requested the performance of the sexual acts about which the plaintiffs testified. Thus, defendant, a person with a distinguished reputation as an acting teacher, abused the relationship which he, as a teacher with overpowering influence over his students, possessed.
In this connection the court observes that the jury in its note intended its decision to “serve as a future deterrent in sexual abuse and harassment behavior of teacher against student.” The *426 court does not believe that the verdict accomplished this result. Although there was testimony elicited during presentation of defendant’s counterclaim for prima facie tort (dismissed after defendant’s case) that indicated that defendant’s teaching career had suffered (which may have convinced the jury that defendant had “suffered sufficiently”), there was no evidence presented with respect to his financial condition. It has been held that a jury is entitled to consider such condition after an award has been made for compensatory damages. (See Rupert v Sellers, 48 AD2d 265; Varriale v Saratoga Harness Racing, 76 AD2d 991; Chilvers v New York Mag. Co., 114 Misc 2d 996.)
MODIFYING AN AWARD OF PUNITIVE DAMAGES
Although “the power of the trial court to grant a new trial on the ground that the verdict is inadequate or excessive, is undisputed” as to compensatory damages (O’Connor v Papertsian, 309 NY 465, 471), the court has found no authority in this State with respect to the power of a Trial Judge to grant a new trial after a jury fails to award exemplary damages, or awards an inadequate sum.
In Nardelli v Stamberg (44 NY2d 500, 504) it was stated that a Trial Judge has the power to overturn an “excessive” award of punitive damages, but the court cautioned that the award “should not be reduced * * * unless it is so grossly excessive ‘as to show by its very exorbitancy that it was actuated by passion’ ”. For cases where new trials were awarded because of excessive exemplary damages, see Loeb v Teitelbaum (77 AD2d 92); Cohen v Hallmark Cards (70 AD2d 509) and Hall v Consolidated Edison Corp. (104 Misc 2d 565). In the latter two cases a new trial was directed solely to determine the amount of punitive damages. (See, also, Le Mistral v Columbia Broadcasting System, 61 AD2d 491, app dsmd 46 NY2d 940.)
The few appellate courts in other States that have considered the issue have held (except for an intermediate appellate court of Florida, where the ruling was reversed by the Supreme Court of that State) that it is improper to grant a new trial solely on the ground of an inadequate punitive damage award. (Louisville & Nashville R.R. Co. v Street, 164 Ala 155; Wangen v Ford Motor Co., 97 Wis 2d 260; St. Regis Paper Co. v Watson, 428 So 2d 243, 247 [Fla] [but see Adkins, J., dissenting]). The only appellate authority approving of a new trial on the above ground (St. Regis Paper Co. v Watson, 409 So 2d 75 [Fla]) was reversed on that very issue. (428 So 2d 243 [Fla]; see, also, Richards Co. v Harrison, 262 So 2d 258, 264 [Fla].)
*427 Secondary authority, without discussion of the rationale, states the above rule relying solely on the above cases. (Ghiardi & Kircher, Punitive Damages, Law & Practice, § 5.39; Stein, Damages and Recovery: Personal Injury and Death Actions, § 197, n 17; Redden, Punitive Damages, §§2.8, 10.3; Ghiardi, Punitive Damages in Wisconsin, 60 Marq L Rev 753, 765; McCormick, Damages, p 298.)
In Louisville & Nashville R.R. Co. v Street (supra, p 157) the court ruled that the Judge may decrease an award of exemplary damages but may not revise it upward, since “plaintiff is without legal right to them” and his complaint “involves no property to which he is * * * [as in compensatory damages] entitled.” Why then may an excessive punitive damage verdict be scaled downward? Because, said the court, when a defendant claims that the award is too high he is objecting to a judgment for an amount beyond the legitimate discretion of the jury since it “was subject to the influence of adverse passion or prejudice, or was the result of a desire to oppress.”
In St. Regis Paper Co. v Watson (supra, p 248), the Florida Supreme Court noted in addition that a defendant is allowed to challenge an exemplary damage award as excessive because, while plaintiff has no right to such damages, the defendant has “a right to be free from unreasonable punishment” which “must be proportionate to * * * the wrong committed.”
The court in Wangen v Ford Motor Co. (supra) gives no reasons for its holding other than citation of the Louisville & Nashville R.R. Co. case. However, it has been noted that “[h]istorically Wisconsin has been a conservative jurisdiction in regard to the doctrine of punitive damages. The supreme court has consistently refused to extend the doctrine since its adoption.” (Burrell & Young, Insurability of Punitive Damages, 62 Marq L Rev 1, 32.)
The problem with the above-cited precedents is that although they each acknowledge the differing goals of compensatory and punitive damages (the one geared toward making the plaintiff whole through reparations for the injury suffered, the other directed toward the punishment and future deterrence of the defendant as well as all others who may be tempted to commit similar acts), yet, in articulating the basis for the rule formulated therein, they focus inordinately on the plaintiff-oriented compensatory aspect and on a vested “right” to a recovery rather than on the defendant and public-oriented deterrence aspect inherent in the concept of punitive damages.
*428 Actually it is wholly immaterial to the court’s review of a punitive damage verdict whether or not plaintiff has any vested property right in the recovery, for the inquiry is more properly directed toward the future effect upon the defendant and society. Society has a major interest in the size of the award, as punitive damages are not merely a peace-keeping device between private parties. (See Prosser & Keeton, Torts [5th ed], § 2; White, Tort Law in America, pp 231-232; Note, In Defense of Punitive Damages, 55 NYUL Rev 303, 305-306.)
One scholar in the field has cogently observed that “to the minds of judges, juries seem more likely to err in giving too much than in giving too little” and that “at one stage it was even considered that verdicts could not be set aside for inadequacy.” (McCormick, Damages, pp 72-73.) The reluctance of the courts that have considered the issue to recognize the power of a Trial Judge to set aside a verdict of punitive damages for inadequacy is part and parcel of the above attitude. Since the authority of trial courts to review damage awards is now generally recognized as far broader than previously, it is only fitting that the power to raise such awards be now recognized as to punitive damages as well. A court should not stand by idly when it is apparent that a verdict is shockingly inadequate. “A jury’s verdict must have some relation to reality and it is the court’s duty to keep it so.” (Faulk v Aware, Inc., 19 AD2d 464, 470.)
“There is no rigid formula by which the amount of punitive damages is fixed, although they should bear some reasonable relation to the harm done and the flagrancy of the conduct causing it” (I.H.P. Corp. v 210 Central Park South Corp., 16 AD2d 461, 467). In order to accomplish its goals, the amount of the award depends upon the degree of culpability of the wrongdoer, the situation and sensibilities of the parties concerned, and the extent to which such conduct offends a public sense of justice and propriety. In addition, “if the purpose of punitive damages is to punish and to act as a deterrent * * * unless it is of sufficient substance to ‘smart,’ the offender in effect purchases a right to [harm] another for a price which may have little or no effect upon him. Indeed, in such a situation a defendant, instead of being deterred from a repetition of his offense, may be encouraged to renew his assault.” (Reynolds v Pegler, 123 F Supp 36, 41-42, affd 223 F2d 429, cert den 350 US 846.)
In light of the discretion granted Trial Judges in New York pursuant to CPLR 4404 to set aside verdicts, the court declines to follow the afore-mentioned out-of-State cases and holds that the same power a court possesses to increase an inadequate or *429 nominal award of compensatory damages exists with respect to punitive damages.
Clearly such discretion should be exercised only in the rare situations where the failure of the jury to award punitive damages, or the award of an inadequate sum, shocks the conscience of the court.
Here the testimony indicated that defendant, playing upon the emotional needs of his insecure students, actively sought to be ensconced as their trusted father figure — indeed, one of the plaintiffs described defendant’s behavior after a sexual experience as “fatherly”. It is this studied effort at domination under the guise of acting in loco parentis, coupled with both his actual and apparent ability to affect plaintiffs’ dearest aspirations, that renders defendant’s actions so heinous. This gross violation was not merely of their bodies but of their trust as well; an invasion so reprehensible as to cry out for the imposition of a sanction expressing the moral outrage of society. Under these circumstances one would be hard pressed to find a situation where punitive damages were more warranted.
Thus, considering the deplorable and outrageous conduct which the jury found was committed by defendant upon these young women under his tutelage, the court believes that the foregoing discretion should be exercised in the case at bar. Accordingly, the court hereby orders a new trial solely on the issue of punitive damages unless defendant shall, within 30 days from the date hereof, stipulate to an award of $5,000 punitive damages for each movant.