**Oliver VALIANT and Christine Valiant,**
**Plaintiffs-Appellants,**

v.

**AMERICAN FAMILY MUTUAL**
**INSURANCE COMPANY,**
**Defendant-Respondent.**

**No. 49016.**

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 27, 1985.

Rehearing Denied Oct. 3, 1985.

Lawrence F. Hartstein, St. Louis, for appellants.

Russell F. Watters, Charles E. Reis, IV, Brown, James & Rabbitt, P.C., St. Louis, for respondent.

CARL R. GAERTNER, Judge.

Plaintiffs, Oliver and Christine Valiant, appeal from the judgment entered on a jury verdict in favor of defendant, American Family Mutual Insurance Company, in a suit to recover for loss by theft under a policy of insurance issued by defendant to plaintiffs. We affirm.

On October 3, 1981, plaintiffs returned home at 11:00 p.m. and discovered that their home had been burglarized. The police were called and upon their arrival, accompanied the plaintiffs around the house as the couple listed the items which appeared to have been stolen. The total value of the stolen items as reported to the police that night was $2,428.00.

The following day, plaintiffs met with a representative of the Caulfield Adjusting Company, an independent, private adjusting service, who agreed to take 10% of whatever recovery it could get from the plaintiffs' insurance company. After ascertaining the policy limit of plaintiffs' theft insurance, $28,200.00, the adjuster and the plaintiffs prepared a revised list of stolen items. This time the total value of the loot was $28,139.30—$60.70 shy of the policy limits. The original list of stolen items contained 13 entries. The second itemization contained 88. Although plaintiffs had reported to the police that 36 bottles of bourbon and 48 cans of beer were missing from their bar, they failed to tell the police that a component stereo system valued at $1400.00 was missing from the same area. They also overlooked the loss of a $1,000.00 crystal chandelier and two crystal lamps valued at $400.00 each. The police were told about a missing jar of pennies and another of half dollars but the loss of $2,000.00 worth of watches and jewelry and $2,500.00 worth of antique clocks, vases and whatnots were not men-

tioned until after consultation with the adjuster.

Plaintiffs notified American Family of the alleged theft loss on October 7, 1981, through Caulfield Adjusting Company. American Family repeatedly sent plaintiffs a "proof of loss" form to complete, which included a sworn documentation of the insureds' alleged loss. The policy expressly required completion of this form, signed and sworn to by the insureds, as a condition precedent to any liability on the part of American Family. Plaintiffs have never complied with this policy condition.

Without the sworn affidavit or sufficient documentation of the alleged loss by the plaintiffs, American Family never approved nor formally denied the plaintiffs' claim. Even up to the time of trial the plaintiffs did not provide the insurance company with the required sworn proof of loss.

Plaintiffs raise two points on appeal: first, that the trial court erred by not defining the word "prejudiced" when it gave MAI 32.24 (affirmative defense—insurance policy defense); and second, that the court erred by giving the instruction in the first place, since American Family did not demonstrate that it had sustained any prejudice. Before these points are addressed, we examine an irregularity at trial implicitly raised by both parties.

■ When the jury returned the verdict in favor of the defendant, there was written on the verdict form, and signed by the jury foreman, the following:

WE FEEL THAT THERE WAS A THEFT BUT THAT THE VALIANTS WERE POORLY ADVISED BY MR. CAULFIELD THAT THERE WAS NO PROOF OF LOSS NOTARIZED AND SIGNED BY THE VALIANTS SENT TO THE INSURANCE COMPANY: HAD THIS BEEN DONE AND THE INSURANCE COMPANY REFUSED TO PAY THE CLAIM, THEN WE WOULD HAVE FOUND FOR THE PLAINTIFF.

When a jury attempts to interpolate something in a verdict about which the jury and the court are unconcerned, such inter-

polated matter is surplusage and should be disregarded. *Kimberlin v. Roberts,* 341 Mo. 267, 107 S.W.2d 24, 27 (1937). Here, the jury was not requested to make special findings, and the space at the bottom of the verdict form was not there for "comments." Juries should not be encouraged to explain their verdicts. *Micari v. Mann,* 126 Misc.2d 422, 481 N.Y.S.2d 967, 970 (Sup.Ct.1984). "Treating gratuitous, explanatory remarks which a jury may append to its general verdict as a special finding of fact or a guide in determining how the jury may have resolved the factual issues would invite surmise and conjecture and lead to uncertainty and confusion." *Barrow v. Talbott,* 417 N.E.2d 917, 921 (Ind.Ct.App.1981).

■ If the jury message were indicia of error or misconduct, clearly we could not ignore it. Here, however, the statement is merely gratuitous and does not suggest any impropriety. The importance of a verdict is that it is the definitive answer given by the jury to the court concerning matters of fact committed to the jury for its determination. *Delaney v. Gibson,* 639 S.W.2d 601, 603 (Mo. banc 1982); *State ex rel. Vogel v. Campbell,* 505 S.W.2d 54, 56 (Mo. banc 1974). Whether a finding made by the jury is intended to be its final decision is a matter for the trial court to determine considering the totality of the circumstances. *Delaney,* 639 S.W.2d at 603. Clearly, the court below reasonably concluded that the verdict form signed by the jurors was intended to be their final decision. The fact that the jury might have concluded differently were the facts otherwise is of no moment.

■ Plaintiffs contend that the court erred in failing to define the word "prejudiced" as used in defendant's affirmative defense instruction, MAI 32.24. The instruction reads as follows:

Your verdict must be for defendant if you believe:

First, plaintiffs failed to submit a proof of loss to defendants within the time prescribed by the policy, or

Plaintiffs concealed material facts to the defendant concerning the alleged theft with the intent to deceive the defendant, or

Plaintiffs concealed and misrepresented material facts to the defendant concerning the value of and extent of the claim with the intent to deceive the defendant, or

Plaintiffs failed to show that a theft did occur, and

Second, defendant, in any one or more of the respects submitted in Paragraph First, was thereby prejudiced.

Counsel for plaintiffs maintains that because his clients are black, the jury was misled into thinking that evidence of racial prejudice on the part of the insurance company was necessary to impose liability on it. This argument strains the imagination and borders upon being specious. It is enough to say that MAI does not require that the word "prejudiced" be defined, nor has any appellate court in this state suggested that a definition be given. Moreover, the record before us fails to show that plaintiffs asked the trial judge to define the term. Having failed to request such a definition at the time of the instruction conference, plaintiffs will not be heard on appeal to complain that such a not-in-MAI instruction should have been given. *Jarrell v. Fort Worth Steel and Manufacturing Co.*, 666 S.W.2d 828, 837 (Mo.App. 1984).

Plaintiffs would have us adopt an absolute rule that failure to file a proof of loss statement, per se, is not sufficient to cause prejudice to an insurance company. In support of this theory, plaintiffs cite *Greer v. Zurich Insurance Company*, 441 S.W.2d 15 (Mo.1969); *Pannell v. Missouri Insurance Guaranty Association*, 595 S.W.2d 339 (Mo.App.1980); and *Schultz v. Queen Insurance Co.*, 399 S.W.2d 230 (Mo.App.1966). These cases, however, do not lay down such a narrow rule.

The court in *Pannell* examined the entire record and determined that the insurer had not been prejudiced by the insured's failure to file a formal proof of loss. The court stated that the purpose of a proof of loss statement is to " 'inform the insurance company of the essential facts in the case which are necessary for the determination of its liability.' " 595 S.W.2d at 351 (quoting from *Hughes v. Patriotic Insurance Company*, 193 S.W.2d 958, 960 (Mo.App. 1946)). The court also noted that " 'such proof is not intended as a mere device to enable the insurer to evade its just obligations under the policy, but it is intended merely as a means of furnishing the insurer with the facts from which it may determine its liability.' " 595 S.W.2d at 351 (quoting *Schell v. Metropolitan Life Ins. Co.*, 3 S.W.2d 269, 271 (Mo.App.1928)). *Pannell* concerned a claim for the theft of an automobile, the identification of which was undisputed and its value easily susceptible of ascertainment. In this case the insurer did not even argue that it had sustained prejudice by reason of failure to file a proof of loss. 595 S.W.2d at 348. *Schultz* involved windstorm damage to a structure capable of examination by the insurer. In *Greer*, at issue was the failure to notify the insurer of an accident as a breach of a condition precedent in an automobile liability policy, not a failure to file a proof of loss. None of the cases relied on by plaintiffs concern a claim for allegedly stolen property, the amount and value of which has been reported with wide disparity by the insured. Nevertheless the general principle laid down in these cases, that in the absence of prejudice to the insurer, the insureds "failure to comply in some immaterial respect does not justify a disclaimer of liability," *Greer*, 441 S.W.2d at 30 is dispositive of the instant case.

 We cannot consider the plaintiffs' failure to submit a sworn proof of loss in isolation. The circumstances surrounding this case would put any reasonable insurer on notice that the claim was suspicious and the refusal to swear to a proof of loss surely enhanced this suspicion. Consider-

ing the evidence in the light most favorable to the verdict reached, *Affiliated Foods, Inc. v. Strautman,* 656 S.W.2d 753, 763 (Mo.App.1983), there was obviously cause for the insurance company to require sworn proof of the theft loss. The theft occurred sometime between 7:00 p.m. and 11:00 p.m., but none of the neighbors saw or heard anything suspicious around the plaintiffs' home. Still, if the second itemization of missing property is to be believed, the thief or thieves managed to remove from the house a couch and chair, three television sets, a crystal chandelier, a large stereo system and more than a side of beef. Moreover, the burglar or burglars absconded with such obscure items as linens, floor tile, six cans of paint and two tree plants. Cameras, clothing, including 18 pairs of Jordache jeans and 9 pairs of Sasson jeans, jewelry, cooking utensils, appliances, tools, 150 records and albums were surreptitiously removed along with 1½ cases of whiskey, 10 one-half gallons of gin, 7 one-half gallons of wine and two cases of Hamm's beer. After the plaintiffs gave the police an initial estimate of the stolen property, they met with an independent adjuster and increased their estimate by more than 1,000%. Further, plaintiffs were unwilling to sign a notarized affidavit verifying that their losses were genuine and that they were not attempting to defraud their insurance company. In light of all the facts and circumstances, plaintiffs' persistent failure to file a sworn proof of loss cannot be considered as an immaterial breach of the policy. American Family had a contractual right to demand a sworn statement from plaintiffs detailing their claim. In view of the suspicious circumstances the finding of the jury that American Family was prejudiced by plaintiffs' refusal to swear to their claim was amply supported by the evidence.

Judgment affirmed.

PUDLOWSKI, P.J., and KAROHL, J., concur.