**Dulcie M. HINTON, Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.**

**No. WD 38988.**

Missouri Court of Appeals, Western District.

Oct. 13, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 1, 1987.

Application to Transfer Denied Jan. 20, 1988.

James S. Formby, Kenneth L. Gottschall, Kansas City, for appellant.

Edward W. Mullen, Daniel F. Church, Deacy and Deacy, Kansas City, for respondent.

Before SHANGLER, P.J., and PRITCHARD and CLARK, JJ.

CLARK, Judge.

This suit in trover and conversion resulted in a jury verdict for plaintiff awarding actual and punitive damages. On motion by the defendant the trial court entered judgment notwithstanding the verdict as to punitive damages leaving plaintiff with a nominal recovery in actual damages. The appeal presents two questions. The first is whether the plaintiff presented substantial and credible evidence to support a verdict for punitive damages. The second is whether the trial court erred in rejecting the first verdict which the jury returned and requiring it to retire for additional deliberations. We conclude the plaintiff made a submissible case and that the original verdict of the jury should be reinstated.

The claim for damages presented by appellant as plaintiff below resulted from the seizure and retention by respondent, State Farm, of a 1977 Cadillac automobile belonging to appellant. The vehicle had been purchased by appellant and her husband, now deceased, from a Kansas City used car dealer. One Levita Moore, a policyholder of State Farm, made a report of a stolen automobile and, based on that report, the Raytown, Missouri police took possession of appellant's car on April 8, 1980. State Farm made a settlement with Levita Moore for the alleged theft of her automobile and took an assignment from her of the certificate purported to evidence title to the Cadillac seized by the police. On the strength of that title, State Farm obtained possession of the vehicle from the police and rejected appellant's claim to be the owner. Appellant contended, and the jury found, that State Farm acquired no title from Levita Moore and, after learning all the facts, wrongfully withheld possession of the car from appellant.

Evidence in the case focused on the title history of the Cadillac, a matter of state records not in dispute. The car was originally titled in the name of Oak Leasing, an entity operated by a franchised new car dealer, John Chezik Buick, Inc. On December 21, 1978, Oak Leasing assigned the original Missouri title certificate to John Chezik Buick which, on the following day, reassigned the title to another dealer, Independence Sales. The car eventually went to Nebraska where a certificate of title was obtained in that state by an assignee of the original Missouri title. After other title transfers, the vehicle was returned to Mis-

souri where it was acquired by Vore Motor Company, the dealer from whom appellant and her husband made their purchase some six weeks before the car was seized by the police.

A second chain of title to the same Cadillac was created when Oak Leasing applied for a duplicate title and, when it was issued, assigned that certificate to Ward Automotive of Riverside, Missouri. The same certificate was assigned to Levita Moore and was used by her to procure a policy of insurance from State Farm. On October 30, 1979, Levita Moore reported that the Cadillac had been stolen from her in St. Louis. She made claim under her State Farm policy and was paid, assigning her ownership interest in the car to State Farm. When a Cadillac was later found in the possession of appellant, State Farm claimed to be the owner pursuant to the title certificate obtained from Levita Moore.

The evidence established that at the time Levita Moore filed her report of a stolen car, the Cadillac which appellant later purchased was in the possession of an automobile dealer in Nebraska pursuant to assignment of the original title documents to the car. The evidence did not show whether Levita Moore was ever in actual possession of any Cadillac car or, if so, what the vehicle identification number was of that vehicle. It was clear that Levita Moore never had possession of the car appellant bought and that vehicle was never stolen.

From the date on which appellant's car was seized until April 22, 1980, it was held in the custody of the police as a stolen vehicle. On the latter date, a representative of State Farm claimed the automobile under a declaration of ownership as assignee from Levita Moore. Thereafter, State Farm held the car against the claim of appellant as owner until May 16 when appellant took the car from State Farm's storage lot by self-help. State Farm did not thereafter actively pursue a claim of ownership and tacitly acknowledged that the car belonged to appellant. It continued, however, to hold its recorded registration of title, thereby delaying appellant's efforts to clear her title for some two years.

The cause was tried and submitted on Count III of appellant's first amended petition alleging trover and conversion of the Cadillac. Actual and punitive damages were sought and were awarded by the jury. On motion by State Farm, the court set aside the verdict for punitive damages and entered judgment for appellant for actual damages only.

■ It is to be noted at this point that by its verdict for actual damages, the jury necessarily found that State Farm had converted the Cadillac by seizing the car and withholding it against the claim by appellant as owner. State Farm has not appealed from that judgment and yet it continues to argue on this appeal that it did not convert the car but was merely retaining possession long enough to complete its investigation. The issue of whether State Farm was liable for conversion is not before this court. We are precluded from giving consideration to that argument. *William A. Smith Contracting Co. v. Missouri Pacific Railroad*, 481 S.W.2d 580, 584 (Mo.App.1972), *cert. denied*, 409 U.S. 1107, 93 S.Ct. 900, 34 L.Ed.2d 687 (1973). The issue to be considered is whether a cause for punitive damages was made and whether the trial court correctly granted judgment for State Farm, notwithstanding the jury's award of punitive damages.

Before reviewing the additional evidence in the case bearing on the submissibility of the claim for punitive damages, consideration of the law on the subject is appropriate to ascertain what proof is required to support punitive damages in a claim for conversion of property.

■ Liability for conversion requires proof that the defendant intended to do an act which deprived the plaintiff of his property. *See Benson v. Jim Maddox Northwest Imports Inc.*, 728 S.W.2d 668, 669 (Mo.App.1987). It is not essential to proof of conversion that it be proved the defendant acted with wrongful motive or intent. *Waverly Timber & Iron Co. v. St. Louis Cooperage Co.*, 112 Mo. 383, 389, 20 S.W. 566, 567 (1892); 89 C.J.S. *Trover and Con-*

version § 7, at 536 (1955). Generally, questions of good faith, motive, knowledge or ignorance, or care or negligence are not involved in actions for conversion. *Lacks v. R. Rowland & Co.*, 718 S.W.2d 513, 517 (Mo.App.1986); *Commercial Credit Corp. v. Joplin Automobile Auction Co.*, 430 S.W.2d 440, 444 (Mo.App.1968); *Schulte v. Florian*, 370 S.W.2d 623, 625–26 (Mo.App. 1963).

■ Appellant's case for conversion was proved and her entitlement to actual damages was established under the above authorities upon the evidence showing State Farm seized and held the Cadillac against the claim of appellant, the lawful owner. Whether State Farm had good cause to believe it acquired title from Levita Moore but was mistaken is immaterial. The case for punitive damages, however, requires other proof.

■ To recover punitive damages, appellant was obligated to offer evidence showing that State Farm not only took the automobile without a valid claim to ownership, but acted wrongfully and intentionally and did so without just cause or excuse. *Routh v. Burlington Northern Railroad,* 708 S.W.2d 211, 217 (Mo.App.1986). If the defendant acts in good faith and in the honest belief his act is lawful, he is not liable for punitive damages even though he may be mistaken as to the legality of the act. *Id.* State Farm argues here that all of the evidence showed its agents believed title to the Cadillac had been obtained from Levita Moore and that its retention of the vehicle was justified for the period of time necessary to determine the true status of the title. This contention may have some merit if the evidence is evaluated in the light most favorable to State Farm, but that is not the standard applicable to review where the court has entered judgment notwithstanding the jury's verdict. In this circumstance, the evidence is taken in the light most favorable to the party against whom the judgment was entered, giving him the benefit of reasonable inferences that may be drawn therefrom. The opposing party's evidence is disregarded, except to the extent it supports the verdict.

*Stark v. American Bakeries Co.*, 647 S.W. 2d 119, 121 (Mo. banc 1983); *Bayne v. Jenkins,* 593 S.W.2d 519, 521 (Mo. banc 1980). Considered under this standard, the following evidence was applicable to the claim for punitive damages.

■ A few days after appellant's car was seized by the Raytown police, Jerry Hinton, appellant's son, called Sim Yeomans, a special investigator at State Farm. Hinton called Yeomans' attention to the fact that on the stolen car report, Levita Moore had indicated the car was white whereas appellant's Cadillac was tan. Hinton also reported to Yeomans that the dealer from whom appellant had purchased the car had instigated a trace of title records and could not find where appellant's car had anything to do with the car reported stolen. Despite these indications of a discrepancy, Yeomans and John Hoke, another employee and Yeomans' superior at State Farm, told Hinton they were confident and satisfied the car belong to State Farm. From April 11 until April 22, Hinton telephoned State Farm repeatedly asserting that State Farm was making claim to the wrong automobile, but Yeomans and Hoke were adamant in maintaining that State Farm was entitled to keep the vehicle and to sell it within the State Farm organization.

On April 22, Yeomans met with Levita Moore to inspect the car. Moore said the car could be hers but she noted some differences and was unsure. Her keys would not fit the car. On that same date, two of plaintiff's sons and the dealer from whom plaintiff had purchased the car met with an FBI clerk, Guy Johnston, who had previous knowledge about this particular car acquired through an on-going investigation into odometer rollback and "title-washing" schemes. Johnston then contacted both Yeomans and Hoke and told them he had traced the original title to the vehicle from the manufacturer and that appellant was the assignee of that original title. He also reported that the title State Farm had obtained from Levita Moore originated in a duplicate title which had been obtained on representation of a lost title certificate.

On April 28, while State Farm was still in possession of appellant's car, Yeomans sent a memorandum to Hoke summarizing the special investigation he had done. From original source documents he had obtained, Yeomans traced in the memo the title history recounted earlier in this opinion. He concluded by observing that the FBI had traced a similar history of the original title passing from Oak Leasing to plaintiff and stated:

The FBI have [sic] verified that this 1977 Cadillac was in possession of Mid–City Toyota in Lincoln, Nebraska, [a prior transferee-transferor in the title chain from Oak Leasing to plaintiff], during the time it was reported stolen in St. Louis, Missouri by our insured.

Jerry Hinton continued to telephone Hoke daily from April 22 to May 16 in an unsuccessful effort to persuade State Farm to release the car. Possession was ultimately obtained, as noted earlier, when the Hintons went to the State Farm storage lot and drove the car away.

The evidence summarized above entitled the jury to find that at least by April 22, 1980, two weeks after appellant's car had been taken by the Raytown police, State Farm knew the car it insured was not the same reported color as appellant's car, that the keys its insured supplied would not fit the car it claimed to own and that its insured was unable to make a positive identification of the vehicle. State Farm also knew at that time of the issuance of a duplicate title and the further fact, confirmed by the FBI clerk, that appellant's title was derived from regular assignments of the original title certificate. On that date, or at the latest by April 28, State Farm also knew that Levita Moore had not been in possession of the car when she reported it stolen in St. Louis, but the vehicle had actually been in the possession of a dealer in Nebraska.

From appellant's evidence, there was adequate proof State Farm did not act in good faith when it continued to claim ownership of the Cadillac and continued to withhold possession of the car from appellant and, indeed, never did voluntarily relinquish possession. After learning that appellant did hold good title to the vehicle, State Farm wrongfully and intentionally and without just cause or excuse refused to deliver possession to appellant and, on that account, became liable for assessment of punitive damages. The trial court erred when it entered judgment on the claim for, punitive damages in favor of State Farm.

*Pollock v. Brown*, 569 S.W.2d 724 (Mo. banc 1978), relied on by State Farm, is distinguishable. There, defendant refused to return to plaintiff a certificate of deposit made out in his name and in plaintiff's name as joint tenants. Plaintiff had supplied all the funds to purchase the certificate and claimed she had only given the certificate to defendant for safekeeping. Defendant claimed a right to hold the certificate as a joint payee. Although the court ultimately concluded that defendant was a bailee and therefore obligated to return the certificate on demand by the bailor, it also found that defendant had just cause to retain the certificate until the final judgment ascertained the rights of the parties. In the subject case, once State Farm learned that appellant's title to the Cadillac was derived by assignment of the original ownership certificate, it did not even have a colorable claim to retain possession and could not have exercised good faith in failing to deliver the car to appellant.

Having concluded, as we do, that appellant was entitled to a judgment for punitive damages, the next question is how that result may properly be directed under the record of bizarre events attending the conclusion of the jury's deliberations in this case. After considering the case for approximately three hours, the jury returned its verdict to the court awarding appellant $840.00 in actual damages and $27,500.00 in punitive damages. Inscribed at the bottom of the page on the verdict form was the following:

1. Punitive damages to be as follows:
    a. $2500.00 to Plaintiff.
    b. $25,000.00 to be donated to a *national* organization of the Plaintiff's choice under the courts supervision.

c. the defendant, State Farm, to pay all legal fees. (Emphasis in original)

The judge looked at the verdict and without consulting counsel or, so far as appears, even disclosing to them the content of the verdict, told the jury the verdict was not in proper form. He also told the jury, in part, " * * * but the damages do have to go to the plaintiff. And that's the law. So— with that in mind, I'm going to send you back upstairs and ask you to consider the matter further."[1] After brief additional deliberations, the jury returned with the same verdict form on which the figure of $840.00 for actual damages had been interlined and $1.00 substituted. The note dividing the punitive damages appearing at the foot of the page had been crossed out and the amount for punitive damages had been reduced to $25,000.00. The court accepted this verdict but later entered judgment, as indicated earlier, awarding appellant $1.00.

Appellant contends the original verdict should have been accepted because it was evident the jury intended an award of $840.00 actual damages and $27,500.00 punitive damages. She argues that the notations about a national organization and the payment of legal fees were surplus.

■■■ The general rule concerning construction of verdicts is that the court will construe a verdict liberally in an effort to ascertain the jury's intent, even though the intent may be inartfully expressed. *Thorne v. Thorne*, 350 S.W.2d 754, 757 (Mo.1961). Even when a verdict is defective in form, if a verdict substantially finds the question in issue in such a way as will enable the court intelligently to pronounce judgment thereon for one or the other party, it is sufficiently certain. *Morse v. Johnson*, 594 S.W.2d 610, 616 (Mo. banc 1980). When the intent is ascertainable and the verdict includes findings on the required issues, it is error for the trial court to refuse to accept the verdict. *Haley v. Byers Transportation Co.*, 394 S.W.

2d 412, 415 (Mo.1965). Mere surplusage in a verdict has often been disregarded. *Valiant v. American Family Mutual Insurance Co.*, 698 S.W.2d 584, 586 (Mo.App. 1985); *Thorne, supra*, 350 S.W.2d at 757; *State ex rel. St. Louis Public Service Co. v. Becker*, 334 Mo. 115, 123–24, 66 S.W.2d 141, 144–45 (1933); *see Kimberlin v. Roberts*, 341 Mo. 267, 271–72, 107 S.W.2d 24, 26–27 (1937).

■■■ It is clear that the portion of the verdict returned in this case directing that State Farm pay legal fees may be ignored. Awards of legal fees and court costs improperly included in verdicts have, in past cases, been treated as surplusage and disregarded. *Roman v. King*, 268 S.W. 414, 415–17 (Mo.App.1924); *State ex rel. Webster v. Knight*, 46 Mo. 83, 85 (1870).

■■■ No Missouri case has been cited by the parties and none has been found by independent research dealing with a verdict in which a jury attempted to distribute an award between a plaintiff and another entity, not a party to the suit. In the case of punitive damages where the award is not compensatory, however, but is assessed for punishment and deterrence, the nexus between the amount of the verdict and the party receiving judgment is of lesser significance than exists where actual damages are at issue. The jury has no realistic function in determining who receives an award of punitive damages. When the jury attempts to interpolate something in a verdict about which the jury and the court are unconcerned, such interpolated matter is surplusage and should be disregarded. *Valiant v. American Family Mutual Insurance Co., supra*, 698 S.W.2d at 586.

■■■ There can be no doubt that the first verdict the jury returned in this case evidenced agreement that punitive damages be assessed against State Farm in the amount of $27,500.00. The jury was not concerned with the recipient of the award. It is enough to sustain the verdict that the jury's intent on the subject is ascertainable.

---

1. The comments were in violation of Rule 70.-02(a) which requires that all instructions be submitted to the jury in writing. Moreover, the statement was subject to interpretation as a direction that plaintiff be awarded damages. In view of our conclusion that the original verdict should have been accepted, this error and its prejudicial effect need not be considered.

State Farm cites *MFA Cooperative Association of Ash Grove v. Elliott*, 479 S.W.2d 129, 134 (Mo.App.1972), for the proposition that the original verdict in this case was a conditional one and therefore fatally defective. In the *MFA* case the jurors found in favor of defendants and against plaintiff on the defendants' counterclaim and assessed defendants' damages at $12,100.00 with the stipulation defendants pay their account with the Farmers Exchange. That case is distinguishable from the subject case, and therefore inapplicable as authority for holding the verdict fatally defective, in at least two respects.

First, the damages at issue in *MFA* were compensatory. The jury was limited in its award to that sum which the claimant had proved to constitute actual losses. The verdict left that sum uncertain because of the deduction of an unstated account balance. In the present case, the award of punitive damages bore no relation to proven actual damages so long as some damage resulted. Punitive damages, which are assessed for punishment and deterrence, are not related to the amount of actual damage. *Schnuck Markets, Inc. v. Transamerica Insurance Co.*, 652 S.W.2d 206, 209 (Mo.App.1983). There was no need in this case to look to the proof of damages to compute State Farm's liability under the judgment nor were there credits or deductions applicable.

Second, the verdict in *MFA* was truly conditional, that is, the claimant was entitled to collect its judgment only upon occurrence of a subsequent event, payment of an outstanding account. Any liability by MFA as counterclaim defendant was postponed until the counterclaim plaintiff settled its account for an unstated balance. As the *MFA* opinion held, a verdict conditioning an award on the performance of some other act should not be received. In the present case, the verdict was unconditional as to State Farm's liability to pay $27,500.00 in punitive damages. That liability was certain and unaffected by reformation of the verdict to disregard reference to a "National organization."

The original intent of the jury in this case to assess punitive damages of $27,500.00 against State Farm was clearly expressed. A judgment in accordance with that verdict should have been entered.

The cause is remanded to the trial court with directions to set aside the judgment previously entered and to enter judgment in favor of Dulcie Hinton and against State Farm Mutual Automobile Insurance Company for $840.00 actual damages, $27,500.00 punitive damages and costs.

All concur.