OPINION OF THE COURT
Lawrence Knipel, J.
Defendants move to set aside the $3,875,800 verdict rendered in this action brought for wrongful eviction and infliction of severe emotional distress.
This case involves the remnant of a once grand hotel which in recent years has fallen on hard times. From its heyday some 40 years ago, when the hotel consisted of 11 buildings containing approximately 2,000 units, the St. George has shrunk to only 3 buildings with less than 700 single-room occupancy apartments. After a lengthy trial the jury credited plaintiff’s evidence that the defendants intentionally embarked upon a course of conduct, the sole purpose of which was to drive the tenants from the approximately 300 apartments contained in the Clarke and Studio buildings. Weldon Yokley, who was president of the tenants association of the Studio building, endured an extended campaign of severe harassment. After the premises were rendered unsafe by defendant’s intentional physical destruction of building systems, the New York City Department of Buildings issued an order directing the remaining tenants, including Yokley, to vacate and the landlord to repair the building. In the ensuing years defendants failed to even commence repairs as directed in the order and sought to prevent the plaintiff’s return by any means including the depositing of dog feces in the hallways. The Clarke and Studio buildings remain empty and uninhabitable to this day.
By its verdict the jury found that plaintiff sustained $125,800 in actual damages and awarded him $3,750,000 in punitive damages. Defendant’s motion to set aside the verdict on various grounds is denied except as to that portion which seeks to reduce the amount of punitive damages awarded, which is granted to the extent hereinafter stated.
*179 Defendant moves to set aside the entire punitive damages award on the grounds that the shareholders of the defendant have entirely changed following the date that Yokley left pursuant to the vacate order. Apparently a group of investors unrelated to the former shareholders purchased all the shares of defendant corporation some four years later. Defendant argues that these new individuals should not be liable for punitive damages due to the misconduct of the prior shareholders. However, it is not the new shareholders, or for that matter even the former shareholders, who have been held liable in this proceeding. The responsible entity is the defendant corporation who undeniably was the owner of the premises before, during and afterwards. The new group of shareholders chose to acquire the defendant corporation by the purchase of its shares and gladly acquired certain tax and other business benefits by so doing. They cannot now complain about any baggage that went along with it. Moreover, the new shareholders have been in control for the past seven or eight years during which they have done nothing to comply with the outstanding administrative order, and therefore are themselves not entirely free of fault.
An award of punitive damages must be reduced, "when it is so grossly excessive 'as to show by its very exorbitancy that it was actuated by passion’ ” (Nardelli v Stamberg, 44 NY2d 500, 504 [1978]). It must bear a reasonable relationship and be proportionate to the wrong committed. (Parkin v Cornell Univ., 182 AD2d 850 [3d Dept 1992]; Micari v Mann, 126 Misc 2d 422 [1984].) There is no rigid formula by which to determine a proper amount of punitive damages and it need bear no definite relationship to compensatory damages. (Hartford Acc. & Indent. Co. v Village of Hempstead, 48 NY2d 218 [1979].)
The assessed fair market value of the entire St. George Hotel, including the nearly 400-unit Weller building which is not involved in the instant litigation, approximates $3 million. The punitive sum awarded by the jury is not only huge in a literal sense, but as can be seen from the total value of the St. George, the award vastly exceeds any benefit the defendant could possibly have derived from its wrongful conduct. As such, the punitive award is disproportionate to the wrong committed and must be reduced.
Defendant cites a number of cases in which sums between $1,000 and $15,000 have been awarded as punitive damages *180 under circumstances where a tenant has been wrongfully evicted from an apartment. The facts herein differ materially from those in the cases cited. The instant defendants did not direct their misconduct exclusively at Weldon Yokley and his apartment. Their focus was rather to empty two buildings consisting of approximately 300 rental units of tenants. The Studio building has remained vacant and uninhabitable for 12 years despite an outstanding repair order. It was within the authority of this jury to know that vacant buildings are worth substantially more than those burdened by rent-controlled and rent-stabilized tenants. (See, Eyedent v Vickers Mgt., 134 Misc 2d 481.) The trier of fact need not be blind to the over-all effect of a wrongdoer’s conduct, but rather may contemplate the over-all effect as well as the over-all benefits reaped as a result of the wrongful conduct. Considering all these factors, an award for punitive damages not in excess of $1 million can be justified from the instant circumstances.
Defendant further moves to set aside the verdict on Statute of Limitations grounds. Defendant contends that even if it caused the vacate order to be issued and thereby constructively evicted the plaintiff, this cause of action accrued when plaintiff left in 1982 and that the instant lawsuit which was commenced in 1991 was therefore untimely. In this defendant principally relies upon Kolomensky v Wiener (135 AD2d 505 [2d Dept 1987]), to contend that a cause of action for wrongful eviction accrues when the tenant departs. If Yokley’s cause of action accrued when he left in 1982, then the instant lawsuit is untimely and must be dismissed. Unlike Kolomensky, where the tenant was removed pursuant to a court order which awarded possession to the landlord, Mr. Yokley was removed by an administrative order to vacate and repair the premises. This administrative order contemplates a temporary situation where the tenant vacates the premises pending the completion of repairs. The order does not address the tenant’s underlying rights to occupancy vis-á-vis the landlord. The order merely addresses an immediate problem relating to the physical safety of the building and its occupants. In fact, tenants are not even proper parties to proceedings which result in the issuance of such administrative orders. An eviction, as illustrated by the fact pattern in Kolomensky, involves the unequivocal removal of a tenant combined with at least the implicit denial of any right of the tenant to return. Neither of these elements are present here. Yokley’s removal was equivocal in the sense that it was only anticipated as being tempo *181 rary (his possessions remained in the apartment for years thereafter), and it is unclear when, if ever, the defendant ever denied tenant’s right to return after the repairs were made. The Statute of Limitations should not begin to run until such time as it is at least reasonably certain that the tenant has, in fact, been evicted. Following his removal, Yokley consistently exhibited an expectation and intention of returning to his room at the St. George. Yokley’s expectations were reasonable and the running of the statute is deemed to have been tolled while he was excluded from the premises pursuant to the vacate and repair order and while he was under the reasonable, albeit ultimately mistaken impression that he would be permitted to return. Furthermore, one who through its own wrongful acts causes a vacate and repair order to issue and who, after the tenants have vacated, refuses to comply with the repair portion of the order, has unclean hands and should not now be permitted to allege a Statute of Limitations defense.
Accordingly, defendant’s posttrial motion to set aside the verdict is granted only to the extent that the amount awarded for punitive damages is reduced for excessiveness to the sum of $1 million. The motion is otherwise denied.